NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**CAROLYN JONES,**
*Petitioner,*

v.

**UNITED STATES POSTAL SERVICE,**
*Respondent.*

---

2012-3149

---

Petition for review of the Merit Systems Protection Board in No. AT-0752-10-0788-I-1.

---

Decided: January 11, 2013

---

CAROLYN JONES, of Duluth, Georgia, pro se.

P. DAVIS OLIVER, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With him on the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director, and PATRICIA M. MCCARTHY, Assistant Director.

---

Before RADER, *Chief Judge*, and DYK and REYNA, *Circuit Judges*.

PER CURIAM.

Carolyn Jones appeals from a final order of the Merit Systems Protection Board (Board) denying her petition for review of the Board's initial decision. *Jones v. U.S. Postal Serv.* (*Final Order*), No. AT–0752–10–0788–I–1 (M.S.P.B. April 6, 2012). The Board's initial decision affirmed the decision of the United States Postal Service (USPS) removing Ms. Jones from her position as Manager of Distribution Operations at the North Metro Processing Center and Distribution Center in Atlanta, Georgia (North Metro) and placing her in a Customer Services Analyst position. *Jones v. U.S. Postal Serv.* (*Initial Decision*), No. AT–0752–10–0788–I–1 (M.S.P.B. June 15, 2011). Because substantial evidence supports the Board's decision, this court affirms.

I

Ms. Jones began her career with the USPS in 1981. By 1993, she was a Manager of Distribution Operations (MDO), EAS-24. Ms. Jones became an MDO at North Metro in 1997. In August 2008, Christine Goughler joined North Metro as the Senior Manager of Distribution Operations, EAS-25, and became Ms. Jones' immediate supervisor. At that time, Ms. Jones was the Lead MDO for "Tour 3," the 3 p.m. to 11:30 p.m. shift at North Metro.

Ms. Goughler challenged Ms. Jones' performance as Lead MDO. She issued a series of escalating warnings to Ms. Jones, beginning with a Letter of Concern issued to Ms. Jones on November 5, 2008. The Letter of Concern informed Ms. Jones that she was "failing to perform thirteen specific duties and responsibilities of her posi-

tion," and addressed Tour 3 productivity issues. *Initial Decision*, slip op. at 3.

On November 26, 2008, Ms. Goughler issued a formal Letter of Warning to Ms. Jones. *Id.* On February 23, 2009, Ms. Jones received a Letter of Warning in Lieu of a Seven Day Suspension for failing to acceptably discharge her duties. *Id.* at 4. The letter stated that Ms. Jones did not clear operations on Tour 3 on the night of February 20, 2009, and did not possess adequate knowledge of and engagement in the process. *Id.* at 4 n.7. On February 24, 2009, Ms. Jones was placed on a performance improvement plan (PIP). *Id.* at 4. Ms. Goughler testified that Ms. Jones' performance improved during the PIP. *Id.* However, on October 9, 2009 Ms. Jones received a Letter of Warning in Lieu of a Fourteen Day Suspension for failing to discharge her duties effectively. *Id.*

Ms. Jones then was moved to Lead MDO for "Tour 1," the 11 p.m. to 7 a.m. shift. On November 6, 2009, delayed mail interrupted Tour 1. *Id.* at 5. Ms. Jones called Ms. Goughler at home at midnight and 2 a.m. to notify her of the delayed mail. *Id.* At the end of Tour 1, over 182,000 pieces of mail had not been processed. *Id.* However, the delayed mail was not counted, and was not placed on the Daily Mail Condition Report (DMCR). *Id.* Relying on the flawed DMCR, Ms. Jones did not report the correct amount of delayed mail at the daily 8 a.m. teleconference after Tour 1 ended. *Id.* While it was not Ms. Jones' direct responsibility to count the delayed mail or to prepare the DMCR, the administrative judge found that, as Lead MDO for Tour 1, "agency procedures clearly designated [Ms. Jones] as the individual responsible for ensuring the accuracy of the DMCR." *Id.* at 14.

On November 16, 2009, Ms. Goughler asked the USPS Office of Human Resources to draft a proposal for Ms.

Jones' removal. *Id.* at 16. On December 17, 2009, human resources sent a draft proposal to the legal department for review. *Id.* The final Notice of Proposed Removal, dated January 30, 2010, featured two charges: (1) Unacceptable Work Performance: Failing to Record Delayed Volume Accurately, and (2) Failure to Discharge Assigned Duties in a Satisfactory Manner. *Id.* at 13; J.A. 38. Both charges relied on a single narrative, describing Ms. Jones' failure to accurately report 182,000 pieces of delayed mail on November 6, 2009. The Notice also stated that Ms. Jones' past record influenced the proposed removal decision, citing the three previous Letters of Warning. J.A. 39.

The deciding official found the evidence fully supported the charges. *Final Order*, slip op. at 2; J.A. 41. He found Ms. Jones' actions were a "serious dereliction of [her] managerial responsibilities" and noted Ms. Jones' performance had not improved despite several corrective measures. J.A. 41–42. The deciding official determined Ms. Jones was not capable of continuing her managerial role, but mitigated the penalty from removal to a reduction in grade to Customer Services Analyst, EAS–17. *Id.* After Ms. Jones appealed, the USPS withdrew the first charge and proceeded only on the charge of Failure to Assigned Discharge Duties in a Satisfactory Manner. *Final Order*, slip op. at 2. The Board affirmed. *Id.* Ms. Jones appeals the Board's final order. This court has jurisdiction under 5 U.S.C. § 7703(b)(1) and 28 U.S.C. § 1295(a)(9).

II

This court's review of a Board decision is limited by statute. This court must affirm the Board's decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; (2) obtained without procedures required by law, rule, or

regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *Briggs v. Merit Sys. Prot. Bd.*, 331 F.3d 1307, 1311 (Fed. Cir. 2003). The petitioner has the burden of establishing reversible error. *Harris v. Dep't of Veterans Affairs*, 142 F.3d 1463, 1467 (Fed. Cir. 1998).

Ms. Jones argues the Board erred: (1) in finding that she was responsible for ensuring the accuracy of the DMCR; (2) in affirming the agency action despite the withdrawal of the charge of Unacceptable Work Performance; (3) in finding she was not disparately penalized; (4) in affirming the administrative judge's exclusion of an audit of North Metro's operation; and (5) in finding the personnel action was not taken in retaliation for protected disclosures Ms. Jones made to Members of Congress.

An agency taking an adverse action against an employee must (1) "establish by preponderant evidence that the charged conduct occurred," (2) "show a nexus between that conduct and the efficiency of the service," and (3) "demonstrate that the penalty imposed was reasonable in light of the relevant factors set forth in *Douglas v. Veterans Admin.*, 5 M.S.P.R. 280, 307–08 (1981)." *Malloy v. U.S. Postal Serv.*, 578 F.3d 1351, 1356 (2009). This court "'will not disturb a choice of penalty within the agency's discretion unless the severity of the agency's action appears totally unwarranted in light of all factors.'" *Lachance v. Devall*, 178 F.3d 1246, 1251 (Fed. Cir. 1999) (quoting *Mings v. Dep't of Justice*, 813 F.2d 384, 390 (Fed. Cir. 1987)). Further, the Board may sustain the agency's chosen penalty even if it does not sustain all of the agency's original charges. *See id.* at 1259.

Having thoroughly reviewed the entire record, this court concludes that substantial evidence supports the Board's decision. The record shows that the charged

conduct occurred: 182,000 pieces of delayed mail were not reported on the DMCR for November 6, 2009, and Ms. Jones testified that the she relied on an inaccurate number during the morning teleconference. *Final Order*, slip op. at 4. Ms. Jones argues, however, that the Board erred in finding she was responsible for the DMCR's accuracy. While Ms. Jones agrees that USPS Standard Operating Procedures indicate that "the MDO" has responsibility for the accuracy of the DMCR, she suggests that her subordinate, Ms. Valerie Wiggs, or her supervisor, Ms. Goughler, should have been held responsible. Appellant's Br. at 3.

The administrative judge credited the testimony of Ms. Jones' co-workers in finding that "agency procedures clearly designated [Ms. Jones] as the individual responsible for ensuring the accuracy of the DMCR." *Initial Decision*, slip op. at 7. This court is not in a position to reevaluate these credibility determinations, which were made by an administrative judge who personally observed the witnesses' testimony, and which are "not inherently improbable or discredited by undisputed fact." *Pope v. U.S. Postal Serv.*, 114 F.3d 1144, 1149 (Fed. Cir. 1997).

The administrative judge found a "clear and direct relationship between [Ms. Jones'] misconduct of failing to discharge her duties in a satisfactory manner and the agency's mission." *Id.* at 8. Substantial evidence supports the finding that the USPS established a nexus between the charged conduct and the efficiency of the service.

The record also contains substantial evidence to support the Board's determination that the penalty imposed was reasonable. As a preliminary matter, the Board correctly determined that the decision to drop the charge of "Unacceptable Work Performance: Failing to Record Delayed Volume Accurately" did not undermine the basis

for the penalty imposed. *Final Order*, slip op. at 3. The dropped charge was simply a more specific version of the charge on which the USPS proceeded, as both charges relied on the same specification and narrative. The administrative judge noted the deciding official "stated that the dropping of charge 1 had no effect on his conclusion that demotion was the appropriate penalty." *Initial Decision*, slip op. at 10. Accordingly, the decision to proceed only on Charge 2 did not affect the merits of the case.

The administrative judge properly considered the *Douglas* factors in determining that the USPS's decision to remove Ms. Jones from her management position and reassign her to a lower grade position was reasonable. *Initial Decision*, slip op. at 10–11. Specifically, the administrative judge considered the seriousness of Ms. Jones' misconduct, her position as a high level manager, her past disciplinary record, and the effect that her "continued lack of engagement and follow-up" and "refusal to take any responsibility" would have on her continued ability to perform her duties. *Id.*; *see Douglas*, 5 M.S.P.R. at 305. Ms. Jones emphasizes that she did not engage in intentional wrongdoing or purposefully falsify the DMCR. Here, however, the absence of malicious intent does not make the penalty unreasonable. As the administrative judge noted, Ms. Jones was on notice that her "lack of engagement" was unacceptable for someone in her position and could lead to discipline. *See Initial Decision*, slip op. at 10.

Additionally, Ms. Jones argues she was discriminated against because other, more serious, mail delays occurred at North Metro and yet went unpunished. Like the Board, we interpret this as an allegation of disparate penalty, because Ms. Jones has "affirmatively waived all of her discrimination claims." *Final Order*, slip op. at 5.

In support of her disparate penalty allegation, Ms. Jones submitted to the Board and this court a partial copy of an audit of North Metro's operations conducted in June 2010 (Service Review). The administrative judge excluded this document because Ms. Jones did not identify it in her prehearing submissions. *Id.* Ms. Jones has not shown the administrative judge abused her discretion in excluding the Service Review. Moreover, this court agrees with the Board's determination that the Service Review does not demonstrate that Ms. Jones was subjected to a penalty inconsistent with those imposed on other employees for similar offenses. *Id.* The report does not show other instances in which delayed mail was inaccurately reported, nor does it identify other individuals with a similar history of discipline who were responsible for the delays. *Id.*

Finally, Ms. Jones argues the Board erred in finding she did not prove her affirmative defense of whistleblower retaliation. Ms. Jones claims the USPS rushed to remove her from her position in retaliation for signing a December 8, 2009 letter to Members of Congress. *Initial Decision*, slip op. at 9. The letter alleged that the USPS, specifically Ms. Gougler and "her direct reports," were refusing employee requests to substitute paid for unpaid leave under the Family and Medical Leave Act. *Id.*

To establish a *prima facie* case of whistleblower retaliation, an employee must prove by a preponderance of the evidence that she made a protected disclosure under 5 U.S.C. § 2302(b)(8) that was a contributing factor in the adverse action. *Ellison v. Merit Sys. Protection Bd.*, 7 F.3d 1031, 1034 (Fed. Cir. 1993). The employee may demonstrate the protected disclosure was a contributing factor through circumstantial evidence by showing that "the official taking the personnel action knew of the disclosure" and the action "occurred within a period of

time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action." 5 U.S.C. § 1221(e)(1).

The administrative judge found the proposal to remove Ms. Jones was underway weeks before she signed the petition. Therefore, even if the petition constituted a protected disclosure, it could not have been a contributing factor. The administrative judge found Ms. Jones "did not sign the petition until December 20, 2009." *Initial Decision*, slip op. at 9 n.19. Further, the administrative judge credited Ms. Goughler's testimony that she decided on November 16, 2009 to propose Ms. Jones' removal. *Id.* at 9. The record also shows Ms. Goughler regularly expressed concern with Ms. Jones' job performance and worked with her "for well over one year to improve her performance deficiencies" before proposing her removal. *Id.* Having thoroughly reviewed the record, this court finds substantial evidence to support the administrative judge's determination that the USPS decided to propose Ms. Jones' removal from her position as Lead MDO well before she signed the petition.

## III

For the forgoing reasons, this court affirms the judgment of the Board.

**AFFIRMED**