NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-3043

ANTHONY TORRES,

Petitioner,

v.

DEPARTMENT OF JUSTICE,

Respondent.

Aaron L. Martin, Martin & Kieklak Law Firm, of Fayetteville, Arkansas, argued for petitioner.

Meredyth Cohen Havasy, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With her on the brief were Michael F. Hertz, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Kirk T. Manhardt, Assistant Director. Of counsel on the brief was Delaine Martin Hill, Assistant General Counsel, Federal Bureau of Prisons, United States Department of Justice, of Washington, DC.

Arbitrator's Decision

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-3043

ANTHONY TORRES,

Petitioner,

v.

DEPARTMENT OF JUSTICE,

Respondent.

Petition for review of an arbitrator's decision in FMCS
No. 08-56247 by Harvey Shapiro.

_____

DECIDED: August 10, 2009
_____

Before NEWMAN, SCHALL, and DYK, Circuit Judges.

Opinion for the court filed by Circuit Judge SCHALL. Opinion concurring in part, dissenting in part filed by Circuit Judge Dyk.

DECISION

Anthony Torres appeals the September 22, 2008 decision of Arbitrator Harvey A. Shapiro ("Arbitrator") that denied Mr. Torres's grievance of the action of the Department of Justice ("agency") removing him from his position as a Correctional Officer with the Federal Bureau of Prisons in Honolulu, Hawaii. Council of Prisons (AFL-CIO) v. Dep't of Justice, No. 08-56247 (Lab. Arb. Sept. 22, 2008) (Shapiro, Arb.) ("Arbitrator's Decision"). We reverse and remand.

DISCUSSION

I.

Beginning in October of 2002, Mr. Torres was employed as a Correctional Officer with the Federal Bureau of Prisons in Honolulu, Hawaii. On May 12, 2008, Mr. Torres was removed from his position based upon the charge of "Use of an Illegal Substance." The "illegal substance" was the steroid Boldenone Undecylenate, also known as "Equipoise" or "Nandrolone," a Class III controlled substance. 21 U.S.C. § 812, Schedule III(e). It was undisputed that Mr. Torres, who at the relevant time was involved in the "Ultimate Fighting Championship," was, on five occasions, injected with the steroid by his trainer to treat hand and shoulder injuries. Mr. Torres told the agency that he believed the injections were some sort of cortisone, and that it was not until after the fifth injection that his trainer told him that he had been administering a controlled steroid. Mr. Torres said that at that point he fired the trainer.

Pursuant to 5 U.S.C. § 7121 and Articles 31 and 32 of the Master Agreement between the Federal Bureau of Prisons and the Council of Prison Locals (American Federation of Government Employees), Mr. Torres grieved his removal. Following a hearing, the Arbitrator denied Mr. Torres's grievance, thereby sustaining the agency's action. Starting from the premise that it was undisputed that Mr. Torres had been injected with a controlled substance, the Arbitrator referred to Mr. Torres's "conduct and poor judgment." Continuing, the Arbitrator stated: "Although feelings of sympathy were evoked for the Grievant since he apparently had no knowledge that steroids were being administered, the [agency's] zero tolerance policy must take precedence over these

feelings, especially for a law enforcement officer in a federal detention center." Arbitrator's Decision, slip op. at 8.

Mr. Torres has timely appealed the denial of his grievance. We have jurisdiction over his appeal pursuant to 5 U.S.C. §§ 7121(f) and 7703.

II.

In an appeal from an Arbitrator's decision we apply the same standard of review as in the case of an appeal from a final decision of the Merit Systems Protection Board. 5 U.S.C. § 7121(f). That means that we must affirm the Arbitrator's decision unless we find it to be "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c)

Before the Arbitrator, the agency was required to establish that (1) the charged conduct occurred, (2) a nexus existed between the conduct and the efficiency of service, and (3) the penalty imposed was reasonable. Pope v. U.S. Postal Serv., 114 F.3d 1144, 1147 (Fed. Cir. 1997). On appeal, Mr. Torres argues that the Arbitrator's decision is flawed because the agency did not meet its burden of establishing a nexus between the misconduct and the efficiency of the service.

"[O]ff duty misconduct has been held sufficient to justify an employee's removal where that misconduct was found to be inconsistent with the mission of the employing agency." Brown v. Dep't of Navy, 229 F.3d 1356, 1361 (Fed. Cir. 2000). Mr. Torres contends, however, that his steroid use cannot be inconsistent with the mission of the agency because his conduct was not criminal, either under Federal or Hawaii state law.

2009-3043                                   3

Section 844 of title 21 of the U.S. Code makes it a crime to "knowingly or intentionally . . . possess a controlled substance," and the relevant provisions of the Hawaii Revised Statutes, H.R.S. §§ 712-1246 and 712-1246.5, similarly require knowledge. Because the Arbitrator specifically found that Mr. Torres did not know he was injected with a controlled steroid, Mr. Torres argues that he did not commit an illegal act, the conduct with which he was charged.

The government responds that, in certain cases, illegal drug sales or use can be sufficiently egregious to warrant a presumption of nexus. See, e.g., Strothers v. United States, 618 F.2d 121 (Ct. Cl. 1979) (heroin sale); Masino v. United States, 589 F.2d 1048, 1056–57 (Ct. Cl. 1978) (off-duty marijuana use). Further, the government urges there can be no doubt that the use of illegal steroids negatively impacts the mission of a law enforcement facility like a prison. The government points to the agency's Drug-Free Workplace policy, which states that "[a]ny illegal drug use, or abuse of legal drugs by bureau employees, has an adverse impact on the accomplishment of the Bureau's law enforcement mission and will not be tolerated." The government also points to statements by the warden of the facility where Mr. Torres was employed. According to the government, those statements indicate that the warden questioned Mr. Torres's ability "to exercise correct and sound judgment" in light of his willingness to be injected with an unknown substance.

III.

We agree with Mr. Torres that the agency failed to demonstrate that his removal promoted the efficiency of the service. The critical point is that the Arbitrator found as a matter of fact—and the government does not challenge the finding—that Mr. Torres

"apparently had no knowledge that steroids were being administered." It does not promote the efficiency of the service for an agency to remove an employee for using an "[i]llegal substance" (the charge Mr. Torres faced) when the employee could not be guilty of criminal conduct because he did not know the substance with which he was being injected was a controlled substance.

The Arbitrator found that Mr. Torres was unaware he was being injected by his trainer with Boldenone Undecylenate, and the government does not contest that Mr. Torres's lack of knowledge shields him from liability under 21 U.S.C. § 844. Certainly, employing a law enforcement officer who engaged in, or was engaging in, illegal conduct would impact the agency's mission. However, based on the Arbitrator's fact finding, Mr. Torres did not engage in illegal conduct, and it was the alleged illegal nature of Mr. Torres's conduct that formed the basis for the agency's removal action. In other words, since Mr. Torres was charged with use of an illegal substance, but he did not know he was using such a substance, he did not commit the offense with which he was charged (which required intent). Under these circumstances, his removal could not promote the efficiency of the service.

The government contends that Mr. Torres's conduct did not have to be illegal for the Arbitrator to find nexus. The government states that Mr. Torres's failure to question his trainer showed "poor judgment." According to the government, this exercise of poor judgment undermined the agency's confidence in his ability to perform his job, directly affecting the efficiency of the service. We are not persuaded by the government's argument. While the Arbitrator did refer to Mr. Torres's "conduct and poor judgment," Mr. Torres was not removed for unspecified "conduct" or "poor judgment." He was

removed for use of an "[i]llegal substance," and we can only sustain the agency's action based on that ground. See, e.g., Lizzio v. Dep't of Army, 534 F.3d 1376, 1384 (Fed. Cir. 2008) ("'Agency action must be sustained, if at all, on the actual grounds relied on by the agency.'" (quoting Gose v. U.S. Postal Serv., 451 F.3d 831, 839 n.4 (Fed. Cir. 2006))). The government does not challenge the Arbitrator's finding that Mr. Torres "apparently had no knowledge" that he was being injected with a controlled substance. As discussed, this means that the charge of "use of an illegal substance," the only charge at issue, cannot be sustained. Nexus cannot be found based on some other charge.

Finally, the Arbitrator's decision to sustain Mr. Torres's removal is further flawed by his reliance on the Bureau of Prisons' purported "zero tolerance policy." We have previously stated that an "agency may be free to adopt and enforce, under the Drug-Free Federal Workplace Program as a condition of employment, a reasonable zero tolerance policy pursuant to which any . . . employee who refuses to submit to or fails a drug test, will be removed." Baird v. Dep't of Army, 517 F.3d 1345, 1351 (Fed. Cir. 2008). In fact, however, the Bureau of Prisons did not have a zero tolerance policy. The Program Statement implementing the drug free workplace program states that "[t]he severity of the disciplinary action taken against an employee determined to be using illegal drugs shall depend on the circumstances of each case" (emphasis added). The Program Statement further states that the "full range of disciplinary actions, up to and including dismissal, are available" (emphasis added). In addition, the Program Statement has a safe-harbor provision, which the Arbitrator specifically found inapplicable in this case. Arbitrator's Decision, slip op. at 8. The agency specifically

provides in its Drug Free Workplace policy that an employee "who identifies himself or herself voluntarily as an illegal drug user, prior to identification through other means, will be given an opportunity for treatment and protection from disciplinary action." A zero-tolerance policy means just that: there is zero tolerance for the activity sought to be regulated. See, e.g., Tucker v. Veterans Admin., 11 M.S.P.R. 131, 133–34 (1982) (discussing zero-tolerance policy for theft). In this case, the agency indicated an employee could receive a range of penalties or be completely shielded from liability. This is inconsistent with a zero-tolerance policy. Thus, it was error for the Arbitrator to state that "the zero tolerance policy must take precedence." Arbitrator's Decision, slip op. at 8.

For the foregoing reasons, the decision of the Arbitrator is reversed. Mr. Torres is entitled to reinstatement with the agency and back pay. The case is remanded to the Arbitrator for a determination of the further relief to which Mr. Torres may be entitled.

# United States Court of Appeals for the Federal Circuit

2009-3043

ANTHONY TORRES,

Petitioner,

v.

DEPARTMENT OF JUSTICE,

Respondent.

Petition for review of an arbitrator's decision in FMCS No. 08-56247 by Harvey Shapiro.

DYK, Circuit Judge, concurring in part and dissenting in part.

I agree with the majority that the arbitrator's decision must be set aside because it relies on a non-existent "zero tolerance policy."  I disagree insofar as the majority holds that (1) the government must prove illegal conduct by the government employee to sustain a charge of "Use of an Illegal Substance" and (2) the discharge of the employee here could not promote the efficiency of the service.[1]

It is well known that the use of illegal drugs in the workplace is a serious problem; it is also well known that employees found to be using illegal drugs frequently claim that they did not know that they were doing so.  It may be difficult in many cases for the government to prove knowledge, and it is entirely appropriate in many circumstances to discharge an employee for illegal drug use without proof of knowledge or criminal

---

[1]  The substance involved here, Boldenone Undecylenate, is illegal in the sense that it cannot be dispensed without a prescription.  There is no suggestion here that Torres took the drug pursuant to a prescription.

activity. The majority's approach would impair the government's legitimate interest in preventing the use of illegal drugs by its employees. I would remand to the arbitrator to determine whether removal in the circumstances of this case would promote the efficiency of the service.