# United States Court of Appeals for the Federal Circuit

---

**JEFFREY A. HANSEN,**
*Petitioner*

**v.**

**DEPARTMENT OF HOMELAND SECURITY,**
*Respondent*

---

2017-2584

---

Petition for review of the Merit Systems Protection Board in No. DE-0752-17-0076-I-1.

---

Decided: December 28, 2018

---

MICHAEL J. KATOR, Kator, Parks, Weiser & Harris P.L.L.C., Washington, DC, argued for petitioner. Also represented by DANIEL R. CLARK; JEREMY D. WRIGHT, Austin, TX.

DOUGLAS G. EDELSCHICK, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by LISA L. DONAHUE, ROBERT E. KIRSCHMAN, JR., JOSEPH H. HUNT; MILI R. SMITH, Office of the Associate Chief Counsel, United States Customs and Border Protection, Chicago, IL.

DEBRA A. D'AGOSTINO, The Federal Practice Group Worldwide Service, Washington, DC, for amicus curiae Metropolitan Washington Employment Lawyers Association.

_____

Before O'MALLEY, CHEN, and STOLL, *Circuit Judges.*

STOLL, *Circuit Judge.*

Following a positive drug test, the Department of Homeland Security removed Jeffrey Hansen from his position as an Information Technology Specialist for U.S. Customs and Border Protection. The Merit Systems Protection Board affirmed the agency's decision. Mr. Hansen now appeals, arguing that the Board improperly assigned him the burden of proving that he inadvertently ingested marijuana, that it erred in finding his position was subject to random drug testing, and that even if it was subject to such testing, he lacked required notice of that fact.

We hold that intent is not an element of the charged conduct and that the Board properly required Mr. Hansen to introduce rebuttal evidence to counter the government's showing of nexus and choice of penalty. We also determine that substantial evidence supports the Board's finding that Mr. Hansen's position was designated for random drug testing. Because Mr. Hansen's remaining arguments are either unpersuasive or waived, we affirm the Board.

## BACKGROUND

Mr. Hansen's supervisor directed him to report for a random drug test. He did so, but failed, testing positive for marijuana. J.A. 99. Mr. Hansen never contested the accuracy of the test result, J.A. 103, but he contended that he had not knowingly used marijuana, averring that he

had "never used any illegal substance and was shocked when [he] got this call," J.A. 102.

After failing the drug test, Mr. Hansen submitted a letter to the agency. In it, he posited that he had inadvertently consumed drug-laced brownies at a barbeque a few days before his failed test. J.A. 100. Mr. Hansen claimed that a friend-of-a-friend's neighbor, a stranger to him, had hosted the barbeque. Upon failing the drug test, Mr. Hansen explained, he informed his friends that he had "tested positive and would probably lose [his] job," and he then learned that some unknown person "at the [barbeque] thought it would be funny to bring [marijuana-laced] brownies." *Id.*

Shortly after Mr. Hansen submitted his letter, the agency issued a Notice of Proposed Removal, explaining that "[t]he use of an illegal drug, such as marijuana, stands in direct conflict with the principles of law enforcement, the mission of the Agency, and the public's trust." J.A. 25. Mr. Hansen then submitted a second letter of explanation, maintaining that he had inadvertently consumed marijuana in brownies at the barbeque. He provided an affidavit from the lifelong friend who had invited him, who stated that although "an attendee did indeed bring 'pot brownies,'" "neither I nor my friends that invited us knew." J.A. 107. Neither Mr. Hansen nor his friend identified the person who had provided the brownies or who had the hosted the barbeque.

The deciding official gave Mr. Hansen's explanation and evidence "significant consideration" but found it unconvincing. J.A. 19–20. She noted that the only evidence that marijuana-laced brownies were even available at the barbeque came from Mr. Hansen's friend—whose only knowledge derived from a phone call with the unnamed host. She emphasized that Mr. Hansen did not provide "any evidence from either the person who purportedly brought the brownies, or from the host" or even

"a statement from anyone else who either knew that the brownies contained marijuana or who did not know, but felt the effect of the drug." J.A. 20. And she questioned how, although Mr. Hansen stated that he did not drink alcohol and preferred to avoid even prescribed medications, he "experienced no behavioral or physiological effects of the drug." *Id.* The deciding official thus sustained a charge of "positive test for illegal drug use—marijuana," and removed Mr. Hansen from his position. Mr. Hansen then appealed to the Board.

Before the Board, Mr. Hansen submitted additional details regarding the barbeque. He reported that the backyard barbeque took place in early April in Minnesota, where the temperature was in the 30s. Mr. Hansen stated that while at the barbeque, he consumed a bratwurst outside, then briefly entered the host's home, ate two unlabeled, frosted brownies in quick succession, and then rejoined the party. Mr. Hansen also revealed that though he felt no immediate effects from the brownies, later that evening he felt tired and suffered an upset stomach, which he attributed to the bratwurst, and the next day, he called in sick to work.

After reviewing the evidence, the Board affirmed the agency's removal decision. After first concluding that Mr. Hansen was subject to random drug testing, the Board held that the government had "met its burden of showing, by preponderant evidence" that Mr. Hansen had committed the charged misconduct, discipline was warranted, and the penalty was reasonable. J.A. 13. The Board acknowledged that inadvertent ingestion would be relevant to its decision, if shown. But it determined that Mr. Hansen, not the government, bore the "burden of showing such inadvertent ingestion," reasoning that Mr. Hansen held the relevant facts and that past cases declining to penalize inadvertent drug use implicitly relied on findings that the employee had proven inadvertent use. J.A. 9–10.

Considering the evidence of inadvertence introduced by Mr. Hansen, the Board found that he failed to "present[] sufficient proof of inadvertent ingestion to warrant interfering" with the agency's removal decision. J.A. 10. The Board explained that Mr. Hansen relied on "third-hand hearsay" to support his story and had not supplied "statements from the hosts, other attendees who observed the presence of the brownies, or the individuals who brought the brownies," or even evidence confirming that he ate brownies. J.A. 11. It further noted that though Mr. Hansen claimed fatigue and upset stomach after consuming the brownies, he attributed those ailments to marijuana consumption only after the deciding official expressed skepticism regarding his lack of symptoms. Even accepting that marijuana consumption might produce the symptoms Mr. Hansen belatedly reported, the Board credited expert testimony that fatigue and upset stomach might occur for many other reasons. It therefore concluded that the government had met its burden, "in significant part" because Mr. Hansen did not prove his inadvertent ingestion theory. J.A. 13. Mr. Hansen appeals, and we have jurisdiction. 28 U.S.C. § 1295(a)(9).

## DISCUSSION

We review the Board's legal conclusions de novo and its fact findings for substantial evidence. *See Campbell v. Merit Sys. Prot. Bd.*, 27 F.3d 1560, 1564 (Fed. Cir. 1994). We may reverse the Board only if its decision is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." *Cobert v. Miller*, 800 F.3d 1340, 1347–48 (Fed. Cir. 2015).

## I

We first consider whether the Board properly held the government to its burden of proof. Before removing an

employee, the government must prove by preponderant evidence that: (1) the charged misconduct occurred, (2) there is a nexus between what the employee did and disciplining the employee to promote the efficiency of the service, and (3) the particular penalty is reasonable. *See Pope v. U.S. Postal Serv.*, 114 F.3d 1144, 1147 (Fed. Cir. 1997); *see also Hale v. Dep't of Transp.*, 772 F.2d 882, 885 (Fed. Cir. 1985). The burden of proof never shifts from the government, but once the government presents evidence tending to establish each of these elements, "the burden of going forward with evidence to rebut that showing necessarily shifts to the employee, who is in the best position to present explanatory evidence to counter that showing." *Schapansky v. Dep't of Transp.*, 735 F.2d 477, 482 (Fed. Cir. 1984); *see also Allred v. Dep't of Health & Human Servs.*, 786 F.2d 1128, 1131–33 (Fed. Cir. 1986) (sustaining removal where employee failed to rebut nexus and failed to rebut reasonableness of penalty). Taking into account all of the facts and circumstances, the Board must then determine whether the government has met its burden. *See Schapansky*, 735 F.2d at 482–83.

Extrapolating from cases in which this court and the Board have reversed removal where an employee inadvertently ingested drugs, Mr. Hansen argues that by requiring him to show inadvertent ingestion, the Board misplaced the burden of proof. Pet'r's Br. 2, 9–10. Mr. Hansen assumes that intent is either an element of a "positive test" charge or a fact the government must prove to show a nexus between the misconduct and the efficiency of the service or to prove the reasonableness of a particular penalty. We disagree. The government had no need to prove intent to establish that Mr. Hansen committed misconduct warranting removal.

Mr. Hansen's undisputedly positive test result sufficed to prove the charge of "positive test for illegal drug use—marijuana." Under agency policy, a positive drug test suffices to find illegal drug use and constitutes mis-

conduct. *See* J.A. 50, 89. As the Board found, under that policy, the government need only show a positive drug test to sustain a "positive test" charge. *See* J.A. 7–8. Though Mr. Hansen might prefer that the agency adopt a different policy, he does not challenge (and we do not decide), the existing policy's permissibility. *See* J.A. 103; *see also Baird v. Dep't of the Army*, 517 F.3d 1345, 1351 (Fed. Cir. 2008) (noting without deciding that an agency "may be free to adopt and enforce . . . [a] policy pursuant to which any [testing designated position] employee who refuses to submit to or fails a drug test, will be removed"). We thus decline his invitation to "inject[] an intent requirement" into the charged misconduct. *See King v. Frazier*, 77 F.3d 1361, 1363 (Fed. Cir. 1996).[1]

Similarly, the government did not need to prove intent to establish that Mr. Hansen's misconduct impacted the efficiency of the service or that it reasonably removed him. Mr. Hansen agrees that "illegal drug use by a [Customs and Border Protection] employee is *in direct conflict with the principles of law enforcement, the mission of the agency and the public's trust.*" J.A. 103 (emphasis added). And though the Board must consider any evidence of

---

[1] We emphasize, however, that, unlike here, where intent is an element of the misconduct charged, the government must prove intent. *See Chauvin v. Dep't of the Navy*, 38 F.3d 563, 565–66 (Fed. Cir. 1994) (sustaining "unauthorized possession" charge but finding government failed to prove "attempted removal" charge because it failed to show intent, "an important element of proof in an 'attempt' charge"); *King v. Nazelrod*, 43 F.3d 663, 665–66 (Fed. Cir. 1994) (explaining government must prove intent for theft charge because "one of the elements of theft is the intent to permanently deprive the owner of possession").

inadvertence in its reasonableness inquiry as part of the analysis mandated by *Douglas v. Veterans Administration*, 5 M.S.P.B. 313 (1981), it does not follow that it is the government's burden to introduce evidence of intent to prove reasonableness. "We have not required that each and every factor of the twelve *Douglas* factors be considered. We have only required that the penalty selected be reasonable when considered against the relevant factors." *Brennan v. Dep't of Health & Human Servs.*, 787 F.2d 1559, 1563 (Fed. Cir. 1986); *see also Jones v. U.S. Postal Serv.*, 502 F. App'x 930, 933 (Fed. Cir. 2013) (affirming penalty and noting "the absence of malicious intent does not make the penalty unreasonable"); *Balouris v. U.S. Postal Serv.*, No. 2008-3147, 2009 WL 405827, at *2 (Fed. Cir. Feb. 19, 2009) (affirming penalty where "[r]egardless of his intent, [employee] struck [co-worker] on a public street").

The absence of intent may be relevant to rebut the government's assertion of nexus or reasonableness in some circumstances. In *Torres v. Department of Justice*, 343 F. App'x 610 (Fed. Cir. 2009), the Board credited a removed employee's evidence showing that he did not know that injections provided by his trainer contained illegal steroids. *Id.* at 613. We held that the government failed to carry its ultimate burden to prove nexus, explaining "[i]t does not promote the efficiency of the service for an agency to remove an employee . . . [who] did not know the substance . . . [he used] was a controlled substance." *Id.* Similarly, in cases in which the Board has found that an employee inadvertently ingested a controlled substance, it has reversed agency penalties, holding that "the penalty of removal is unreasonable and that the maximum reasonable penalty is no penalty at all." *See, e.g., McNeil v. Dep't of Justice*, 117 M.S.P.R. 533, 539–40 (M.S.P.B. 2012). But, as we have previously explained, the burden of introducing evidence showing that, in the circumstances of a particular case, the

charged conduct would not impact the efficiency of the service or the proposed penalty is unreasonable rests with the employee. *See Schapansky*, 735 F.2d at 482; *cf. Frey v. Dep't of Labor*, 359 F.3d 1355, 1360 (Fed. Cir. 2004) (applying same two-step framework to analysis of removal for failure to accept reassignment). Contrary to Mr. Hansen's argument, this "requirement for coming forward with evidence does not shift the overall burden of proof." *See, e.g., Anderson v. Dep't of Transp.*, 827 F.2d 1564, 1576 (Fed. Cir. 1987).

We read the Board's opinion as properly applying this framework in the context of this case. Having found that the government had introduced sufficient proof to establish that Mr. Hansen committed the conduct with which he was charged, the Board considered whether his evidence of inadvertent ingestion rebutted the government's assertion of a nexus between the charged conduct and the efficiency of the service, or otherwise undermined the reasonableness of the penalty. *See* J.A. 8–13. The Board concluded that Mr. Hansen's evidence of inadvertent use was weak and, thus, inadequate to undermine the government's showing of nexus or the reasonableness of the penalty imposed. We find no arbitrariness, abuse, or other error in the Board's conclusion that Mr. Hansen failed to persuasively rebut the government's showing of nexus or its choice of penalty.[2] Mr. Hansen supported his

---

[2]  The Board suggested that Mr. Hansen needed to prove his theory of inadvertent ingestion by preponderant evidence. J.A. 13. The quantum of rebuttal evidence necessary may depend on the quality of the government's case—"[i]t  may be that little countering evidence would be required, where, for example, the *prima facie* case was minimally supported." *Schapansky*, 735 F.2d at 482. We do not decide in this case precisely how much more evi-

theory of inadvertent ingestion only with "third-hand hearsay"—his longtime friend's statement that the barbeque host had stated that an unnamed attendee had brought unmarked marijuana-laced brownies to the barbeque. J.A. 11. Besides Mr. Hansen, no one testified that they had even seen the brownies. And though Mr. Hansen later reported some symptoms consistent with marijuana ingestion, he did so only after the deciding official explained that she had discredited his version of events, in part, because she found it "highly questionable" that he did not report any "behavioral or physiological effects" from eating marijuana-laced brownies. J.A. 20. Further, an expert testified that the symptoms Mr. Hansen reported were not necessarily caused by marijuana—inadvertently ingested or otherwise. *See* J.A. 12. We therefore affirm the Board's ruling that on the entire record, the government bore its burden of establishing not only that the charged conduct occurred, but that nexus existed and that the penalty was a reasonable one. *See* J.A. 13.

## II

We next consider whether the Board erred in finding that Mr. Hansen was properly ordered to undergo random drug testing. Drug testing constitutes a search, and the Fourth Amendment limits an agency's ability to subject its employees to drug testing. *See Nat'l Treasury Employees Union v. Von Raab*, 489 U.S. 656, 665 (1989). To pass constitutional muster, testing must be reasonable. *See Holton v. Dep't of the Navy*, 884 F.3d 1142, 1146 (Fed. Cir. 2018). Customs and Border Patrol imposes random drug testing on employees in "testing designated positions."

---

dence Mr. Hansen needed to provide, however, because the Board correctly found the minimal evidence he adduced insufficient.

Mr. Hansen does not challenge the general reasonableness of this policy. *See* J.A. 103 ("I am not disputing the [agency] policy for random drug tests . . . ."). Instead, Mr. Hansen urges that, absent a specific testing designation, the agency may not reasonably conduct random drug tests. He thus asserts that because the government failed to show that *he* occupied a testing designated position, requiring him to undergo a drug test violated his Fourth Amendment rights.

We need not decide whether, absent a specific designation, the agency might permissibly have tested Mr. Hansen. The Board found that Mr. Hansen occupied a position subject to random drug testing, and we hold that substantial evidence supports that fact finding. *See* J.A. 6–7. The agency's "Drug-Free Federal Workplace Program" handbook lists employees with "access to the Customs Law Enforcement Automated Systems" as testing designated, J.A. 32, 34, 58, and evidence offered by the government indicated that Mr. Hansen's position required access to such systems, *see* J.A. 123–27. Mr. Hansen attacks this evidence, Pet'r's Br. 28–33, but our sole inquiry is whether substantial evidence supports the Board's finding. It does, and we do not reweigh evidence.

For the first time on appeal, Mr. Hansen now also argues that his test violated his Fourth Amendment rights because there was "no conceivable basis upon which [he] could have ascertained that he was subject to testing." Pet'r's Br. 26–27. He asserts "there must be some objective basis upon which a reasonable employee would be able to ascertain that he was subject to testing. Otherwise, testing would be arbitrary and not reasonable." Pet'r's Br. 26–27, 33–37. Mr. Hansen previously argued that the government's failure to introduce his notice of testing designation proved that he was not subject to random drug testing. But before the Board, despite being represented by counsel, Mr. Hansen did not

allege that any lack of notice rendered his test constitutionally impermissible. Accordingly, we decline to address the argument in the first instance. *See Solorio v. United States*, 483 U.S. 435, 451 n.18 (1987) (declining to address Fifth Amendment argument not previously raised); *In re DBC*, 545 F.3d 1373, 1380 (Fed. Cir. 2008) (declining to hear constitutional challenge not raised before agency); Oral Arg. at 18:03–14, 27:10–15, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=20 17-2584.mp3. For the same reason, we do not reach Mr. Hansen's argument that the agency violated internal policies requiring written notice prior to testing. *See* 5 C.F.R. § 1201.56(c)(1) (identifying "harmful error in the application of the agency's procedures" as an affirmative defense); J.A. 110 ("Appellant does not raise any affirmative defenses . . . .").

CONCLUSION

Having found the parties' remaining arguments unpersuasive, we affirm the Board's decision.

**AFFIRMED**

COSTS

No costs.