NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**FRANCISCO CUNANAN PAMINTUAN,**
*Petitioner*

**v.**

**DEPARTMENT OF THE NAVY,**
*Respondent*

---

2019-2232

---

Petition for review of the Merit Systems Protection Board in No. SF-1221-19-0179-W-1.

---

Decided: February 4, 2020

---

FRANCISCO CUNANAN PAMINTUAN, Port Hueneme, CA, pro se.

NATHANAEL YALE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by JOSEPH H. HUNT, TARA K. HOGAN, ROBERT EDWARD KIRSCHMAN, JR.

---

Before PROST, *Chief Judge*, LOURIE and CLEVENGER, *Circuit Judges*.

PER CURIAM.

Francisco Cunanan Pamintuan petitions for review of a decision of the Merit Systems Protection Board ("Board") denying Mr. Pamintuan's request for corrective action under the Whistleblower Protection Enhancement Act ("WPA") against the Department of the Navy ("agency"). *See Pamintuan v. Dep't of the Navy*, No. SF-1221-19-0179-W-1, 2019 WL 2121458 (M.S.P.B. May 10, 2019) ("*Decision*"). We affirm.

I

Mr. Pamintuan worked as a Supervisory Contract Specialist at the agency's Naval Base Ventura County and oversaw a team of Contract Specialists. At the time, Mr. Pamintuan had a Contracting Officer warrant, which was necessary for him to perform his job as a supervisor.

During the 2015 fiscal year, Mr. Pamintuan's team was understaffed, had difficulty reaching timeline requirements, and faced internal pressure to meet the timeline requirements. As a result, Mr. Pamintuan directed his subordinates to award contracts without preparing the required documentation, including awarding contracts without Pre or Post Negotiation Memorandums ("PNM").

In August 2015, Mr. Pamintuan spoke with a ranking officer, Commander Paul Chan, regarding executing contracts without following the proper procedures. Commander Chan asked Mr. Pamintuan to prepare a draft email for Commander Chan to send to management officials to explain they were "not PMAP [Process Management and Audit Program] ready because [they] did not have business documentation printed and in the files."[1]

---

[1]    The Administrative Judge ("AJ") found that PMAP ready referred to Mr. Pamintuan's department being

App.[2] 76.  On August 27, 2015, Mr. Pamintuan sent the requested draft email to Commander Chan.  Of relevance, this draft email included the language, "I'm tasking . . . [Mr. Pamintuan] that execution is more important and to just catch-up on business documentations later." *Decision*, slip op. at 3.

On September 2, 2015, Commander Chan sent a revised draft to Mr. Pamintuan and Mr. Pamintuan's direct superior.  He never, however, sent the email to management officials.  Of relevance, the email noted that Commander Chan "tasked . . . Mr. Franc Pamintuan . . . to execute . . . actions at the risk of business documentations." *Id.* at 3–4.  Instead of emailing management officials, Commander Chan called Renae Kvendru, the Chief of Contracting Office.  On this call, Commander Chan told Ms. Kvendru that they were not PMAP ready.  Ms. Kvendru expressed serious concern.

On September 9, 2015, Ms. Kvendru received an anonymous email, which Mr. Pamintuan later claimed to have sent.  The email noted that "we are being told to award contracts with no business documentation being done.  [W]e are awarding contracts before we even determaine [sic] fair and reasonable." *Id.* at 4–5.

Upon receiving the September 9, 2015 email, Ms. Kvendru ordered an onsite investigation.  Following the findings of the onsite investigation, a command investigation was conducted.  As part of this investigation Mr. Pamintuan was interviewed.  In his interview, Mr. Pamintuan provided Commander Chan's September 2,

---

"ready for an internal inspection of the agency's business documentation." *Decision*, slip op. at 26 n.7.

[2]    We use "App." to refer to the "Corrected Appendix for Informal Brief" submitted by the Government.  No other appendices were submitted.

2015 draft email and stated that this email showed that Commander Chan improperly tasked him to execute tenants' funded actions at the risk of business documentation. To Mr. Pamintuan, this meant "to issue contract awards although the documentations required by regulation to process the awards were incomplete." *Id.* at 6. Commander Chan was also interviewed and stated that he thought that "[d]ocuments were not getting printed out in a timely manner to complete the contract file." App. 76–77.

The command investigation ended on November 23, 2015. The accompanying report concluded, among other things, that:

> The allegation that PWD Ventura PEAD was awarding contracts without properly documenting the business decision was substantiated. The contract specialists and contracting officers responsible for preparing the documents have stated they were awarding contracts without first preparing the Pre/Post Negotiation Memorandum (PNM).

> The allegation that PWD Ventura Public Works Officer (PWO) and Deputy Public Works Officer (DPWO) demanded, encouraged, or condoned the awarding of contracts without determining pricing fair and reasonableness or documenting the business decision is unsubstantiated. While there was significant leadership pressure to make execution goals even with limited staffing, the evidence did not show that leadership demanded, encouraged, or condoned deliberate evasion of statutory or regulatory requirements.

*Decision*, slip op. at 6.

The investigation report also recommended that the agency "[i]ssue appropriate disciplinary action to" Commander Chan, Mr. Pamintuan, and others, including the

Deputy Public Works Officer and the FEAD Director. *Id.* at 6–7.

Prior to any disciplinary action, Mr. Pamintuan took a two-year Supervisory Contract Specialist position at Guantanamo Bay. In this role he retained return rights to his Supervisory Contract Specialist position at Ventura. His Contracting Officer warrant at Ventura, however, was administratively terminated because he was leaving for Guantanamo Bay. App. 139.

On Mr. Pamintuan's last day working at Ventura he received a Letter of Reprimand for Inattention to Duty pertaining to his failure to ensure that proper business documentation was completed. Others were disciplined as well. For instance, the Deputy Public Works Officer received a Letter of Reprimand, while Commander Chan and the FEAD Director both had their Contracting Officer warrants terminated.

Mr. Pamintuan exercised his return rights and on February 24, 2017, returned to his Supervisory Contract Specialist position at Ventura. Mr. Pamintuan was unable to return to his former duties, however, because Ms. Kvendru refused to grant him a new Contracting Officer warrant. On March 6, 2017, feeling "shunned, belittled, and treated as a non-entity" because of "deliberate, on-going retaliatory harassment," Mr. Pamintuan sought retirement effective September 30, 2017. *Decision*, slip op. at 15. Mr. Pamintuan then went on paid leave from March 6, 2017 until his effective retirement date.

Following his retirement, Mr. Pamintuan sought unemployment benefits. After being initially denied, Mr. Pamintuan appealed to the California Unemployment Insurance Appeals Board ("CUIAB"). The CUIAB found that Mr. Pamintuan was entitled to unemployment benefits "because he was subjected to an illegal discriminatory act" and therefore had good cause for leaving. App. 162–63.

Mr. Pamintuan then filed an individual right of action appeal at the Merit Systems Protection Board. After finding the jurisdiction requirements satisfied, the AJ found that Mr. Pamintuan (1) "proved by a preponderance of the evidence he engaged in protected activity" when he provided the September 2, 2015 email during the command investigation; (2) "established he experienced covered personnel actions" when he received the Letter of Reprimand, was detailed to Contract Specialist duties, and had his reinstatement request for his Contracting Officer warrant denied; and (3) "established by a preponderance of the evidence his protected activity was a contributing factor in the personnel actions." *Decision*, slip op. at 10, 13, 18–19. The AJ, however, rejected Mr. Pamintuan's argument that his 'involuntary' retirement was a covered personnel action. *Id.* at 17–18.

The AJ then analyzed the three factors laid out in *Carr v. Social Security Administration*, 185 F.3d 1318 (Fed. Cir. 1999), to determine whether the agency would have taken the same personnel actions if Mr. Pamintuan had not made the protected disclosure. After analyzing these factors and based on the record before it, the AJ found that the agency would have taken the same personnel actions had Mr. Pamintuan not made his protected disclosure. The AJ also rejected Mr. Pamintuan's argument that because he was ordered to execute contracts without PNM, he should not be disciplined. Ultimately, Mr. Pamintuan's request for corrective action was denied.

On June 14, 2019, the initial decision became final and Mr. Pamintuan timely petitioned for our review. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

II

On petition for review Mr. Pamintuan challenges only portions of the decision. He argues that the AJ (1) incorrectly incorporated a mitigation analysis into whether the agency met its burden in establishing that it would have

taken the same actions had he not made his protected disclosure; (2) incorrectly found that his actions were not excused when he was allegedly following orders from his superior; and (3) incorrectly found that his retirement was not a covered personnel action.

## A

Our review is limited and requires us to affirm unless the Board's decision is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). Whether a decision is in accordance with the law "refers to the application of the wrong legal standard, and the application of the law is reviewed *de novo*." *Rodriguez v. Sec'y of HHS*, 632 F.3d 1381, 1384 (Fed. Cir. 2011). Substantial evidence refers to "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *McLaughlin v. Office of Pers. Mgmt.*, 353 F.3d 1363, 1369 (Fed. Cir. 2015) (internal quotations removed).

Under the WPA, "[i]f the employee establishes [a] *prima facie* case of reprisal for whistleblowing, the burden of persuasion shifts to the agency to show by clear and convincing evidence that it would have taken 'the same personnel action in the absence of such disclosure.'" *Whitmore v. Dep't of Labor*, 680 F.3d 1353, 1367 (Fed. Cir. 2012) (quoting 5 U.S.C. § 1221(e)); *see also Nelson v. Dep't of the Army*, 658 F. App'x 1036, 1038–39 (Fed. Cir. 2016). To determine whether the agency would have engaged in the same personnel action absent the protected disclosure, the *Carr* factors are analyzed. *Whitmore*, 680 F.3d at 1368. These factors include, (1) "the strength of the agency's evidence in support of its personnel action;" (2) "the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision;" and (3) "any evidence that the agency [took] similar actions

against employees who [were] not whistleblowers but who [were] otherwise similarly situated." *Carr*, 185 F.3d at 1323.

### B

On petition for review Mr. Pamintuan argues that the AJ incorrectly incorporated a mitigation analysis into whether the agency would have acted the same way absent Mr. Pamintuan's protected disclosure. He argues it was improper for the AJ to find that the "agency officials had some motive to retaliate against [Mr. Pamintuan], but . . . not find that motive to be significant at the time it took the personnel actions at issue." Pet'r's Br. 4. We disagree.

The second *Carr* factor focuses on the existence and *strength* of any motive to retaliate on the part of the agency officials who were involved in the alleged reprisal. *See Carr*, 185 F.3d at 1323. Thus, contrary to Mr. Pamintuan's contentions on petition for review, weighing the strength of the motive of those who influenced the alleged reprisal decision is part of the analysis. *See, e.g.*, *Swartwoudt v. Dep't of Homeland Sec.*, 694 F. App'x 776, 779 (Fed. Cir. 2017) (finding that "[a]gency officials had weak motivation to retaliate against [petitioner]"). We find that the AJ's analysis is in accordance with the law.

### C

Mr. Pamintuan also argues that the AJ improperly rejected his "obey-now, grieve-later" defense. *See* Pet'r's Br. 6. He argues that Commander Chan's September 2, 2015 email establishes that Commander Chan ordered him to execute contract actions without PNM. Therefore, Mr. Pamintuan argues that he cannot be disciplined because he was following orders. The AJ, however, disagreed that Commander Chan ordered Mr. Pamintuan to execute contract actions without PNM. To support her finding, the AJ relied on Commander Chan's command investigation interview and Commander Chan's revisions to the draft email

that Mr. Pamintuan sent to Commander Chan. The AJ found that at most Commander Chan tasked Mr. Pamintuan with "putting aside filing requirements." *Decision*, slip op. at 26.

Mr. Pamintuan's argument asks us to reweigh the evidence and credit his positions. For instance, he argues that it was improper for the AJ to "simply assume[] Mr. Chan [in his command investigation interview] was truthful." Pet'r's Br. 13–14. He suggests that "[i]t is understandable that Mr. Chan wished to fabricate a cover story to protect himself . . . ." *Id.* at 13. He also argues that the anonymous September 9, 2015 email further shows that Commander Chan ordered him to execute contracts without proper PNM.

Our review, however, is based on whether substantial evidence supports the AJ's finding. *See Hansen v. Dep't of Homeland Sec.*, 911 F.3d 1362, 1369 (Fed. Cir. 2018) ("[O]ur sole inquiry is whether substantial evidence supports the Board's finding . . . [and] we do not reweigh evidence."). The AJ's decision demonstrates that she considered the command investigation (*see Decision*, slip op. at 25–26) and the revisions that Commander Chan made to the draft email (*see id.* at 26 n.6). Upon a review of the record, we find that substantial evidence supports the AJ's finding.

D

Mr. Pamintuan also argues that the AJ incorrectly found that his retirement was not a covered personnel action. He argues that the AJ improperly required him to "**always** stand [remain on the job] and fight" Pet'r's Br. 21–22 (emphasis and bracketed text in original). He also argues that the AJ failed to give the CUIAB's finding preclusive effect.

Contrary to Mr. Pamintuan's argument, the AJ did not require Mr. Pamintuan to remain at his job indefinitely to

fight.  Instead, the AJ correctly required Mr. Pamintuan to show that he lacked a meaningful choice in his retirement. *See*, *e.g.*, *Decision*, slip op. at 14 (citing *Bean v. U.S. Postal Serv.*, 120 M.S.P.R. 397, ¶ 11 (2013)).  Against this standard, the AJ found that Mr. Pamintuan "supplied no evidence the agency did anything other than reassign him and treat him as an employee in the reassigned position" and that he did not prove that he "was subject to intolerable working conditions that would have left a reasonable person without a choice but to retire." *Decision*, slip op. at 18.  We do not find fault in the AJ's analysis.

Mr. Pamintuan also argues that the CUIAB decision should have preclusive effect.  In addition to disagreeing about the preclusive effect a CUIAB decision should have, the Government suggests that we lack jurisdiction in this case because the CUIAB allegedly found that Mr. Pamintuan "was subjected to national origin discrimination by the Navy." Resp't's Br. 10–12.  The Government points to *Perry v. Merit Systems Protection Board*, 137 S. Ct. 1975 (2017), for the proposition that if this case includes a national origin discrimination claim, then this is a "mixed case" over which we lack jurisdiction. *Id.* at 11–12.

While we agree that we would not have jurisdiction if this were a mixed case, we find that, given the particular facts of this case, this is not a mixed case.  As *Perry* notes, "[t]he key to district court review . . . was the employee's clai[m] that an agency action appealable to the MSPB violates an antidiscrimination statute listed in § 7702(a)(1)." 137 S. Ct. at 1984 (emphasis and internal quotations removed).  Given the record at hand, we do not find Mr. Pamintuan is claiming that the agency violated an antidiscrimination statute listed in § 7702(a)(1).

First, Mr. Pamintuan provided in his amended Federal Circuit Rule 15(c) statement that "[n]o claim of discrimination by reason of race, sex, age, national origin, or handicapped condition [i.e., those listed in § 7702(a)(1)] has been

or will be made in this case" and that "[a]ny claim of discrimination by reason of race, sex, age, national origin, or handicapped condition . . . has been abandoned or will not be raised or continued in this or any other court." *Pamintuan v. Dept' of the Navy*, No. 19-2232, Amended Statement Concerning Discrimination Pursuant to Fed. Cir. R. 15(c), ECF No. 24 (Nov. 6, 2019). Moreover, contrary to the Government's suggestion and given the record provided, we do not find that the CUIAB decision included a finding of national origin discrimination. The CUIAB decision notes that it awarded Mr. Pamintuan unemployment benefits based on an "illegal discriminatory act" but does not detail what this act is or if the act would be covered by § 7702(a)(1). *See* App. 162–163. Further, *Sanchez v. California Unemployment Insurance Appeals Board*, the case cited in the CUIAB decision (and by the AJ), found an illegal discriminatory act where the petitioner faced demotion in retaliation for union-related activities. 685 P.2d 61, 68–71 (Cal. 1984). Union-related activities, however, are not among the types of discrimination included in § 7702(a)(1). Therefore, an "illegal discriminatory act" found by the CUIAB may be outside those enumerated in § 7702(a)(1). Accordingly, we decline to find that this is a mixed case.

Similar to what this court and the Merit Systems Protection Board have found before, we do agree with the Government that the CUIAB decision does not have preclusive effect on the Board. *See, e.g.*, *Wade v. Dep't of Labor*, 212 F. App'x 995, 997 (Fed. Cir. 2007) ("The CUIAB decision is based on California state law and is not binding upon the Board."); *see also Herring v. U.S. Postal Serv.*, 40 M.S.P.R. 342, 346 (1989) ("decisions by state unemployment tribunals are not given collateral estoppel effect"). We therefore find no error in the AJ's decision to not give the CUIAB decision preclusive effect.

### III

We have considered the other arguments raised by Mr. Pamintuan and find them unpersuasive.  For the foregoing reasons, we affirm the AJ's denial of Mr. Pamintuan's request for corrective action.

**AFFIRMED**

Costs

The parties shall bear their own costs.