NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**JOSE C. YBARRA,**
*Petitioner*

**v.**

**DEPARTMENT OF JUSTICE,**
*Respondent*

---

2024-1848

---

Petition for review of the Merit Systems Protection Board in No. CH-0752-17-0422-I-2.

---

Decided: January 10, 2025

---

JOSE C. YBARRA, Charlotte, MI, pro se.

EVAN WISSER, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by BRIAN M. BOYNTON, ELIZABETH MARIE HOSFORD, PATRICIA M. MCCARTHY.

---

Before REYNA, TARANTO, and STARK, *Circuit Judges.*

PER CURIAM.

The U.S. Department of Justice employed Jose Ybarra as a special agent for the Federal Bureau of Investigation (FBI) until charging him with unprofessional off-duty conduct and removing him from employment. After unsuccessfully appealing his removal to the FBI's Disciplinary Review Board, Mr. Ybarra appealed his removal to the Merit Systems Protection Board (Board). The Board's assigned administrative judge rejected his challenges to the agency's removal decision, *Ybarra v. Department of Justice*, No. CH-0752-17-0422-I-2, 2018 WL 2463376 (M.S.P.B. May 30, 2018) (*Initial Decision*), and the full Board agreed, adopting the *Initial Decision* as the Board's final decision, supplemented by one more finding of fact supporting the result, *Ybarra v. Department of Justice*, No. CH-0752-17-0422-I-2, 2024 WL 1231943, at *1 (¶ 1), *7 (¶ 21) (M.S.P.B. Mar. 21, 2024) (*Final Order*). Mr. Ybarra now appeals his removal to us. We affirm.

I

A

Mr. Ybarra joined the FBI as a Criminal Investigator in 1998 and was later promoted to a GS-1811-13 Special Agent position. In 2003, the Office of Professional Responsibility (OPR) within the Department of Justice proposed to remove Mr. Ybarra for several instances of misconduct, as characterized by the Board:

> threatening the physical safety of a support employee; making inappropriate remarks to female associates that were considered sexual in nature; leaving an inappropriately aggressive voice-mail message for a member of the public; leaving unprofessional voice-mail messages for female coworkers; and multiple interactions with associates that disrupted the office.

*Initial Decision*, at 2.[1] The relevant OPR official sustained the charges but mitigated the penalty to a 45-day suspension in 2004. *Id.* The official told Mr. Ybarra that this would be his "final notice that offensive interpersonal interactions will not be tolerated by the Bureau" and that he would be removed if he "engage[d] in any further misconduct involving the utterance of words or actions of a threatening, offensive and/or sexual nature." *Id.*

In 2006, the FBI assigned Mr. Ybarra to the Detroit Division, Lansing Resident Agency, to investigate crimes against children. And no further incidents were reported until years later. Between 2014 and 2016, Mr. Ybarra engaged in several instances of misconduct, for which he was suspended and otherwise penalized but not removed. In March 2016, a female cashier at Meijer's, a grocery store, filed a police complaint against Mr. Ybarra for persistent and unwanted advances. A few months later, a minor employed at Dairy Queen and her mother also filed a police complaint against Mr. Ybarra for inappropriate behavior and harassment.

In January 2017, OPR issued a Report of Investigation that recommended removal of Mr. Ybarra from his employment because of "Unprofessional Conduct - Off Duty" (FBI Offense Code 5.21)[2]—specifically, "his behavior at Meijer's and Dairy Queen." *Id.* at 4. In May 2017, the OPR deciding official sustained the charge, and the agency removed Mr. Ybarra from his position effective

---

[1] For the *Initial Decision*, we cite the page numbers of the version as provided in the Supplemental Appendix filed in this court by respondent.

[2] The FBI Offense Code was not included in the record here or before the Board, but "the agency's description of what the Code contains does not appear to be in dispute." *Final Order*, at *5 (¶ 16).

June 1, 2017. Mr. Ybarra sought review of the removal decision by FBI's Disciplinary Review Board, which affirmed OPR's finding of misconduct and sustained the removal. *Id.* at 5.

## B

Mr. Ybarra appealed his removal to the Board. In its *Initial Decision*, issued May 30, 2018, the Board found that the agency had proved by a preponderance of the evidence that Mr. Ybarra had engaged in misconduct against employees at Meijer's and Dairy Queen and that the agency established a nexus between his misconduct and the work of the FBI. Regarding nexus, the Board found that his misconduct contravened the agency's primary mission—protecting people, especially protecting children under the age of 18—as evidenced by the fact that two individuals, one a minor, filed police reports "for protection against him." *Id.* at 7. It added that Mr. Ybarra's conduct affected management's trust and confidence in his job performance, as evidenced by his local supervisor's belief that Mr. Ybarra needs "'professional assistance' before performing his full duties" (earlier he had received "Excellent" ratings) and local law enforcement partners' indications that "they are uncomfortable with [Mr. Ybarra] and do not want to work with him." *Id.*

The Board also upheld the agency's removal penalty. The Board recited the often-used analytic factors: "(1) the type of offense the appellant committed, (2) his type of employment, (3) his past disciplinary record, (4) his past work record, (5) the effect of his conduct upon the service, (6) penalties imposed for similar offenses, (7) standard agency penalties, (8) any notoriety, (9) whether the appellant was on notice to avoid the particular misconduct at issue, (10) his potential for rehabilitation, (11) any mitigating circumstances, and (12) the availability of alternative sanctions." *Id.* at 8 (citing

*Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305–06 (1981)). And it concluded that the penalty was "within the tolerable bounds of reasonableness." *Id.*

The Board found the following: Mr. Ybarra's misconduct demonstrated "a serious lack of judgment," that his interaction with the minor was "in direct contravention of the FBI's mission and his work investigating crimes against children," and ultimately that because "he lost credibility and damaged his relationships with the local law enforcement community," he was "unable to fulfill critical responsibilities as an agent." *Id.* Mr. Ybarra's type of employment weighed against him because "[l]aw enforcement officers may be held to a higher standard of conduct than other federal employees." *Id.* (citing *Negron v. Department of Justice*, 95 M.S.P.R. 561, 573 (2004)). Mr. Ybarra's disciplinary record, namely, his 45-day suspension for misconduct in 2003, was a significantly aggravating factor. Removal was within the range of penalties for the offense of unprofessional conduct off-duty where an aggravating factor is present. *Id.* at 9. Based on the penalties that FBI previously imposed on Mr. Ybarra for his offensive interpersonal actions and a police warning regarding the Meijer's incident, he was "clearly on notice to refrain from offensive behavior with women." *Id.* And although there was "evidence of [his] positive rehabilitative potential" (refraining from pursuing the Meijer's cashier after receiving a police warning, acknowledging his poor judgment, and expressing remorse), *id.,* other record evidence—that he did not control his behavior, did not seek out the professional assistance his supervisor believed he needed, and "deflect[ed] responsibility for the inappropriate conduct from himself to a teenage service worker and her mother"—weighed against his rehabilitative potential, *id.* at 9–10. The Board found that the deciding official had considered mitigating

circumstances and determined that the *Douglas* factors weighed in favor of the removal decision. *Id.* at 10.

## C

On Mr. Ybarra's petition for review, the full Board upheld the removal by adopting the *Initial Decision* and adding one fact providing further support for the nexus finding—that Mr. Ybarra's "persistent and inappropriate advances toward the Meijer's cashier adversely affected the agency's reputation because that individual was aware that the appellant was an FBI agent." *Final Order*, at *3 (¶ 11); *id.* at *7 (¶ 21). The Board then considered and rejected Mr. Ybarra's challenges to the *Initial Decision*'s penalty analysis. *Id.* at *4–7 (¶¶ 12–21).

Mr. Ybarra contended that the Board in the *Initial Decision* should not have considered his 2003 suspension as an aggravating factor because it "was too remote in time." *Id.* at *5 (¶ 17) (first citing *Kehrier v. Department of Justice*, 27 M.S.P.R. 477 (1985); and then citing *Bennett v. Department of Transportation*, 15 M.S.P.R. 686 (1983)). The Board disagreed, explaining as follows:

> [I]t was permissible for the agency to consider the appellant's 2003 suspension as an aggravating factor but that the passage of time lessens its import. Although none of the case law seems to bar consideration of prior discipline due merely to passage of time, we find that passage of time may go to the weight that the prior discipline should be accorded, along with the severity of the prior discipline and whether the current disciplinary action is being taken for similar reasons.

*Id.* at *6 (¶ 19). The Board then determined that "the agency did not abuse its discretion in giving the appellant's 2003 suspension significant weight as an aggravating factor" because Mr. Ybarra's "prior discipline was serious," he had received an explicit warning that it

was his "final notice," and "the prior suspension was based largely on the same general type of behavior underlying the removal at issue here, i.e., inappropriate comments to female coworkers." *Id.*

Mr. Ybarra also argued that his "excellent performance history" constituted "evidence of his rehabilitative potential." *Id.* at \*4 (¶ 14). But the Board agreed with the administrative judge's finding in the *Initial Decision* that Mr. Ybarra "exhibited poor rehabilitative potential." *Id.* at \*6 (¶ 20). While his work performance was excellent, the Board stated, his charged offense "[did] not relate to the appellant's performance in his position, but rather to his interpersonal conduct outside the workplace." *Id.* In particular, the Board continued, weighing against his rehabilitative potential were his response to the notice of proposed removal (stating that "had the Dairy Queen service worker's mother called him instead of the police, he would have known whether this girl was having issues that were causing her to 'engage superfluously' with him and he could perhaps have been recruited as a father figure or 'standby babysitter'") and his "lack of appreciation for the seriousness of his misconduct" (as indicated by the fact that the behavior he characterized as "off-duty flirtation" led two people to seek police protection). *Id.* The Board upheld the removal penalty. *Id.* at \*7 (¶ 21).

Mr. Ybarra timely petitioned for review by this court. We have jurisdiction under 28 U.S.C. § 1295(a)(9) and 5 U.S.C. § 7703(b)(1)(A).

## II

We may set aside the Board's decision only if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). The petitioner bears the

burden of establishing reversible error in the Board's final decision. *Sistek v. Department of Veterans Affairs*, 955 F.3d 948, 953 (Fed. Cir. 2020). We review the Board's legal decisions without deference and its findings of fact for substantial evidence. *McIntosh v. Department of Defense*, 53 F.4th 630, 638 (Fed. Cir. 2022). "Substantial evidence consists of 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Frederick v. Department of Justice*, 73 F.3d 349, 352 (Fed. Cir. 1996) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

To remove an employee, the government must prove, by a preponderance of the evidence, that "(1) the charged misconduct occurred, (2) there is a nexus between what the employee did and disciplining the employee to promote the efficiency of the service, and (3) the particular penalty is reasonable." *Hansen v. Department of Homeland Security*, 911 F.3d 1362, 1366 (Fed. Cir. 2018). We "will not disturb a choice of penalty within the agency's discretion unless the severity of the agency's action appears totally unwarranted in light of all the factors." *Mings v. Department of Justice*, 813 F.2d 384, 390 (Fed. Cir. 1987); *see also Lachance v. Devall*, 178 F.3d 1246, 1251 (Fed. Cir. 1999).

Mr. Ybarra challenges the Board's ruling only on the ground that "the Board committed error and an abuse of discretion by sustaining the removal penalty." Ybarra Informal Br. at 1. He argues that the Board erred in two respects: its reliance on his 2003 suspension as an aggravating factor and its finding that he lacked rehabilitative potential. We reject both arguments.

A

Mr. Ybarra first argues that the Board's reliance on his 2003 suspension—14 years before his 2017 removal— as an aggravating factor was legal error. *Id.* at 2. He contends that the Board's precedent precludes it from

considering discipline that was imposed so long ago. *Id.* at 2–4 (relying on *Bennett*, 15 M.S.P.R. at 687, and *Kehrier*, 27 M.S.P.R. at 480 n.1).

We are not persuaded by Mr. Ybarra's argument that "the passage of time alone" necessarily renders past discipline irrelevant for the purpose of aggravation. *Id.* He identifies no statute or rule or precedent of this court so stating, and he does not explain why there should be such a constraint on a federal employer. As for the two Board decisions he cites, *Bennett* and *Kehrier*, neither one establishes the rule that Mr. Ybarra proposes: At most, they establish that timing can be a consideration, not that the passage of time alone must render past discipline irrelevant. Moreover, the specific reasoning in the two decisions does not establish Mr. Ybarra's proposed rule. *See Bennett*, 15 M.S.P.R. at 687 (holding that a *disparate treatment* claim could not invoke penalties imposed on air traffic controllers who struck in 1970 in assessing penalties imposed on air traffic controllers who struck in 1981); *Kehrier*, 27 M.S.P.R. at 480 n.1 (holding that an employee's "1974 suspension *may* be deemed too remote in time to justify consideration in determining an appropriate penalty for current charges," which occurred in 1982 (emphasis added)).

In this case, there is a reasonable justification for considering Mr. Ybarra's 2003 suspension as an aggravating factor. His "prior discipline was serious," he had received an assertedly "*final* notice that offensive interpersonal interactions will not be tolerated by the Bureau," and "the prior suspension was based largely on the same general type of behavior underlying the removal at issue here." *Final Order*, at *6 (¶ 19). And contrary to Mr. Ybarra's contention, this consideration was not the lone one supporting removal. The Board, in the *Initial Decision*, recited others. *See, e.g., Initial Decision*, at 8 ("According to [the deciding official], the appellant is unable to fulfill critical responsibilities as an agent

because he lost credibility and damaged his relationships with the local law enforcement community."); *id.* at 10 ("[The deciding official] told the appellant he displayed a 'disturbing lack of reality awareness regarding the consequences of [his] actions' and determined he was unsuitable for employment with the FBI."). We see no reversible error in the consideration of the 2003 suspension.

## B

Mr. Ybarra argues that the Board failed to take into account his "rehabilitative potential in assessing the penalty of removal," particularly as shown by his "excellent performance." Ybarra Informal Br. at 6–7 (citing multiple cases emphasizing the importance of rehabilitative potential in a *Douglas* factor analysis). We see no reversible error in this respect. Both the agency and the Board *did* consider Mr. Ybarra's rehabilitative potential, including his performance record, and both determined, on a reasonable basis, that the potential was low. *Initial Decision*, at 9 (noting that Mr. Ybarra made no claims "to have placed [] controls, internal or external, on his behavior"), 10 ("[T]he record does not show [Mr. Ybarra] received the help his supervisor believes was required for full rehabilitation."); *Final Decision*, at *6 (¶ 20) (discussing Mr. Ybarra's "disturbing" response to the notice of proposed removal and the fact that "he still does not seem to understand" the "seriousness of his misconduct.").

## III

We affirm the Board's decision.

The parties shall bear their own costs.

**AFFIRMED**