# United States Court of Appeals for the Federal Circuit

2007-3046


KIM R. BAIRD,

Petitioner,


v.


DEPARTMENT OF THE ARMY,

Respondent.

Mark C. Prugh, Attorney a Law, of Waynesville, Missouri, argued for petitioner.

Anuj Vohra, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. On the brief were Jeanne E. Davidson, Director, Todd M. Hughes, Deputy Director. Of counsel was Jeffrey S. Pease, Attorney.

Appealed from: Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

2007-3046

KIM R. BAIRD,

Petitioner,

v.

DEPARTMENT OF THE ARMY,

Respondent.

Petition for review of the Merit Systems Protection Board
in No. CH0752060377-I-1

_____

DECIDED:  February 26, 2008

_____

Before RADER, <u>Circuit Judge</u>, CLEVENGER, <u>Senior Circuit Judge</u>, and DYK, <u>Circuit Judge</u>.

Opinion for the court filed by <u>Circuit Judge</u> CLEVENGER.  Dissenting opinion filed by <u>Circuit Judge</u> RADER.

CLEVENGER, <u>Senior Circuit Judge</u>.

Kim R. Baird ("Baird") seeks review of the final decision of the Merit Systems Protection Board ("Board") sustaining her removal from her position as a psychiatric nursing assistant at the Fort Leonard Wood Army Hospital ("Agency") in Missouri.  For the reasons set forth below, we vacate the Board's final decision and remand the case for further proceedings.

I

In December of 2003, Baird was notified in writing that her position met the criteria as a testing designated position ("TDP") for random drug testing under the Army's Drug-Free Federal Workplace Program.  The notice explained that she would be

subject to random drug testing as a condition of continued employment. If she refused to take a test as directed or tested positive for illegal drug use, the notice warned:

> [Y]ou will be (1) immediately taken out of your TDP through reassignment, detail, or other personnel action to ensure that you do not occupy a TDP, and (2) referred to the Employee Assistance Program (EAP). In addition you may be reassigned, demoted, or separated according to applicable regulations.

Baird signed a copy of the Drug-Free Workplace Program statement, attesting to her awareness of the Program and that her position was subject to it.

On November 4, 2005, Baird was ordered by her first-line supervisor, Sgt. David Phillips ("Phillips"), to take a random drug test promptly. On November 22, 2005, Maj. Linda Blackman ("Blackman"), Baird's second-line supervisor, was notified that Baird had failed the November random drug test. As the second-line supervisor, Blackman was responsible for determining what action to take in light of the failed drug test, after receiving a proposal for discipline from Phillips.

Blackman promptly contacted Beverly Williams ("Williams") in the Civilian Personnel Advisory Center ("CPAC"), which is the Agency entity responsible for advising management on personnel matters. Blackman was informed by email on November 22 that Williams's office would track down the regulation on drug use and proposed penalties. Williams replied to Blackman by email on November 23 that Baird should be taken out of her position immediately, detailed to a position that is not a TDP, and referred to EAP. Williams surmised that after Baird met with the EAP officer, "we can see if we should look at returning her to the nursing assistant job, permanent reassignment, change to lower grade or removal." Williams also informed Blackman

that nothing in the regulations required Baird's removal.[1]  Baird's case was the first instance of a failed drug test under the Drug-Free Federal Workplace Program at the Fort Leonard Wood Hospital, and the facility had no stated policy about what punishment, if any, should be given to Baird.  At a loss to know what action to recommend to Blackman, Williams sent an email to the Deputy Commander for Administration of the Hospital, Lt. Col. Patrick Sauer ("Sauer"), asking for advice about the hospital's policy.  Sauer then turned to his human resources coordinator, Inez Neeley ("Neeley"), asking her to consult with the Army Medical Command ("MEDCOM"), which is the headquarters organization for the U.S. Army Medical Department.

Neeley contacted Ernesto Morales ("Morales"), a labor relations officer at MEDCOM to ascertain MEDCOM's policy and practice regarding failed drug tests under the Drug-Free Federal Workplace Program.  Morales first responded to Neeley by email on November 29, saying that he was aware of seven or eight occasions of positive drug tests, and that the penalty for a failed drug test is a "local call."  Neeley reported this information back to Williams, who asked for further clarification because she could find no regulations calling for removal.  Neeley sent another email to Morales, asking for clarification about whether there was any regulatory guidance requiring removal.

---

[1]     The Agency's Table of Penalties in force at the time provided for a range of penalties from a three-day suspension to removal for "unauthorized use or possession of a controlled substance."  This table proved inapplicable to Baird's case, as there was no evidence that she introduced a controlled substance to a work area. Her drug test tested her for the metabolite of marijuana, not the drug itself.  At most, she brought the metabolite (inside her) into the workplace.  Thus, the Agency's existing Table of Penalties did not have a proposed penalty for Baird's offense.  The Drug-Free Workplace policy statement, which Baird signed, cited removal as a possible but not the sole penalty for violation of the policy.

2007-3046                                3

Morales responded by email saying that "[t]here is nothing in the [regulations] that specifically mandates a removal action for testing positive for drugs." He stated that of the seven MEDCOM instances of positive drug tests, of which he was aware, six of the employees were removed and one was reassigned.

The Commander of the Hospital, Col. Sharon DeRuvo ("DeRuvo"), was notified of Baird's failed drug test on November 28, by email. DeRuvo was informed that Williams wanted to meet with the Commander before initiating an official response because Baird's case would set a precedent.

On November 29, Williams related further information about Baird's situation to Neeley. Williams indicated that Blackman wanted to retain Baird, but that input from the Commander was necessary. She noted that the Hospital's Table of Penalties might support, but did not require removal.[2] Blackman was reported as saying that she would rather not lose Baird, "but if that is the policy, then we'll separate her." Neeley replied that "whatever we do with this case will set precedence [sic] for every other case we have."

On December 5, Neeley sent an email to a large group of Hospital officials, all of whom were familiar with the situation, including the lack of any existing Agency policy as to the appropriate punishment. Neeley opined that "there are too many irons in this fire . . . [and] too many folks are being made aware of the situation." Neeley stated that "[t]he Commander has made a decision on what action she wants to take and CPAC is working in the direction based on the Commander's decision." Neeley further stated in

---

[2]     As noted above, the evidence at trial failed to show that Baird had committed a drug offense covered by the existing Table of Penalties.

the email that she had advised a unit of the Hospital that wished to employ Baird of the Commander's decision.

On direction from DeRuvo, Williams then drafted a proposed removal letter, which Phillips signed on December 14, 2005. Baird responded to the proposal in writing and orally, but to no avail. The Agency, per Blackman, issued the formal notice of removal on February 3, 2006.

II

Baird appealed her removal to the Board on March 2, 2006, and filed her first discovery request on April 15. Among other things, Baird sought access to "all documents [including emails] . . . in the possession of the Agency related to the decision to dismiss Ms. Baird from her employment." Baird was forced to file two motions to compel discovery, and finally, on July 17, four days before the first hearing day and 69 days late, the Agency delivered a first set of email messages responsive to the discovery request. At the hearing on July 21, Baird's counsel requested and received additional emails from Blackman and Phillips. Two of the email messages were written by Williams at the time she was drafting the proposal of removal. Williams related to Blackman that "Col. DeRuvo has decided that we should propose removal." To Neeley, Ms. Williams stated that "LTC Sauer spoke with COL DeRuvo and the decision is to propose removal."

The July 21 hearing was continued to August 8. On August 7, Baird's counsel interviewed Sauer and presented him with a copy of Neeley's December 5 email, which had been copied to Sauer. Sauer volunteered that he regularly archived such messages in his computer. Counsel for the Agency refused to permit Sauer to produce

any emails he had archived relevant to Baird's removal. Counsel for Baird promptly moved to compel production of Sauer's archived emails.

At the August 8 hearing, Baird's counsel asked again for access to the email messages Sauer admitted he had archived. Sauer explained that he had only been asked by Agency counsel, the very day before, if he had any relevant emails. Counsel for Baird then demanded production of Sauer's relevant archived emails. Agency counsel objected to such discovery, saying: "This is discovery in the middle of the trial. Mr. Prugh [Baird's counsel] has made his discovery motions. The Agency has responded to them many times. To litigate discovery in the middle of the hearing is not appropriate." Mr. Prugh replied: "Well, to hide relevant evidence is also not appropriate and that's what's going on." The administrative judge sustained the Agency's objection to production of Sauer's archived emails.

During the course of the hearings, Neeley testified that to the best of her knowledge DeRuvo made the decision to remove Baird. In addition, Sauer testified that advice had been sought from Morales since the Fort Leonard Wood Hospital had no precedent in dealing with failed drug tests. Sauer understood Morales to have said that basic MEDCOM precedent was to order removal for TDP employees who fail random drug tests. He further testified that "the precedent meant a lot in Colonel DeRuvo's decision to propose removal of Ms. Baird" and that DeRuvo made the decision to propose removal.

Notwithstanding the email messages indicating that DeRuvo was involved in the decision to remove Baird, Blackman testified that in fact she made the removal decision independently, based on the proposal drafted by Williams and signed by Phillips.

Blackman testified that she had considered the reasonableness of removal as a penalty by assessing Baird's case under the <u>Douglas</u> factors,[3] which are designed to preclude arbitrary punishment.

The administrative judge assumed for purposes of analysis that DeRuvo believed that Baird should be removed and that she ordered initiation of removal proceedings by instructing Williams to draft the proposal of removal. The administrative judge viewed DeRuvo as, at most, giving a guideline to the deciding official, who would be at liberty to make the final penalty decision. Given Blackman's testimony that she in fact had made the decision, the administrative judge held that no impropriety had occurred in the processing of Baird's removal. The Agency's decision to remove Baird was affirmed. Baird did not seek review of the administrative judge's decision by the full Board. The administrative judge's decision thus became the final decision of the Board, and Baird

---

[3] The <u>Douglas</u> factors derive from <u>Douglas v. Veterans Administration</u>, 5 M.S.P.R. 280 (1981). In that case, the Board decided that it had the power to guard against a penalty imposed by an agency that, on the facts of the case, is "clearly excessive, disproportionate to the sustained charges, or arbitrary, capricious or unreasonable." <u>Id.</u> at 284. The Board set forth twelve separate inquiries, not all of which would be applicable in any given case, to assure itself that there was no need for the Board to mitigate the agency's penalty to a lesser penalty to guard against a legally excessive penalty. The inquiries became known as the <u>Douglas</u> factors.

The twelve factors stated in some generality are: the nature and seriousness of the offense, the employee's job level and type of employment, the employee's past disciplinary record, the employee's past work record including length of service, the effect of the offense on the employee's ability to perform satisfactorily, consistency of the penalty with penalties given to similarly situated employees, the notoriety of the offense or its impact on the reputation of the agency, the clarity of notice to the employee of the rule violated, potential for the employee's rehabilitation, mitigating circumstances surrounding the offense, and the adequacy and effectiveness of alternative sanctions to deter such conduct in the future. <u>Id</u>. at 332.

The <u>Douglas</u> factors are used by a deciding official to explain and justify the penalty imposed in a given case.

timely petitioned for review in this court.  We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## III

We must affirm the final decision of the Board unless we determine that it is arbitrary, capricious or otherwise not in accordance with law.  Where substantial evidence supports fact findings of the Board, we will not disturb such findings.  5 U.S.C. § 7703(c) (2000).

## IV

Before the Board, and in this court, Baird's violation of the Drug-Free Federal Workplace Program rules is not in question.  Her complaint, in a nutshell, concerns the process of her removal and the penalty she received.  The theory of Baird's case before the Board was that the proposing official, Phillips, and the deciding official, Blackman, were mere puppets of DeRuvo in proposing action against Baird and in determining the reasonableness of Baird's penalty.  Baird contended that DeRuvo, in violation of fundamental procedural rules, bypassed the deciding official by mandating a zero tolerance removal penalty for a failed drug test.  Baird emphasizes that she was a civilian employee in a U.S. Army hospital facility.  She contends that in such a facility, the rules of military command pertain, namely that orders from the commanding officer are expected to be followed by officers of lower rank.  In addition to acting as the deciding official, Baird asserts that DeRuvo further erred by enforcing a previously unannounced policy of zero tolerance that required removal as the only possible penalty for violating the Drug-Free Federal Workplace Program rules.

On the record before us, we see some evidence supporting Baird's theory, but we equally see substantial evidence supporting the Board's decision that Blackman in fact made the decision to remove Baird based on an assessment of the Douglas factors that removal was the appropriate penalty in this case. Given our standard of review on the record presently before us, we would be compelled to affirm the Board's final decision unless we determine that the Board, in some other fashion, acted arbitrarily or abused its discretion.[4]

The record demonstrates that virtually the whole discussion within the Agency concerning the punishment for Baird, and who ordered it, took place in email messages. The record before us also demonstrates clearly that the Agency did not comply with the discovery requests made on it to deliver all pertinent email messages. The need for full discovery of all relevant email related to Baird's case is beyond question. Sauer's close relationship in rank serving under DeRuvo further emphasizes the need for full disclosure from his files, as well as from the files of all the other Agency personnel involved in Baird's case.

Against Baird's argument that the Board erred in denying discovery of Sauer's archived emails, the Agency's brief to this court comes up lame. Rather than deal head-on with the Agency's undeniable noncompliance with Baird's early email discovery request, the Agency merely states that the administrative judge was within his sound

---

[4] Baird challenges the Board's final decision on several grounds other than the issue of discovery. We have reviewed Baird's challenges on those other grounds and find them, on the record now before us, unavailing. With respect to the administrative judge's refusal to permit Baird to call additional witnesses, we conclude that the judge did not abuse his discretion in light of Baird's failure to show that DeRuvo's testimony would address contested matters, and Baird's failure to take depositions or conduct interviews of other requested witnesses.

discretion in refusing to permit additional discovery during the pendency of the hearing. The Agency fails to explain why it did not comply fully with Baird's discovery requests before the hearings began.

As noted above, Baird chose, as she was free to do, not to seek review of the administrative judge's decision by the full Board. The full Board therefore had no occasion in this case to consider the failure of the Agency to have complied with Baird's relevant discovery requests.

The Board has stated that "[d]iscovery is the process by which a party may obtain relevant information from another party to an appeal." McGrath v. Dep't of the Army, 83 M.S.P.R. 48, 51 (1999). Discovery in proceedings before the Board is provided pursuant to the Board's regulations. A party to whom a proper discovery request has been made must either comply or "stat[e] an objection to the particular request and the reasons for the objection." 5 C.F.R. § 1201.73(c)(1). The scope of discovery is broad: "[d]iscovery covers any nonprivileged matter that is relevant to the issues involved in the appeal . . . ." Id. § 1201.72(b). Under 5 C.F.R. § 1201.41(b)(4), the administrative judge has broad discretion in ruling on discovery matters. The Board, however, has not hesitated to insist on proper compliance with legitimate discovery requests, and it often finds abuse of discretion by administrative judges who fail to enforce compliance with the Board's regulations concerning discovery requests. See Miller v. United States Postal Serv., 85 M.S.P.R. 494 (2000); Gregory v. Fed. Commc'ns Comm'n, 79 M.S.P.R. 563 (1998); Beam v. Office of Pers. Mgmt., 71 M.S.P.R. 629 (1996); McCray v. Dep't of Def., 68 M.S.P.R. 186 (M.S.P.B. 1995); Kiser v. Dep't of Educ., 66 M.S.P.R. 372 (1995).

In this case, there can be no doubt that Sauer's email, and perhaps the email of others not yet disclosed to Baird, is relevant to Baird's theory of the case. Early in the proceedings, Baird made her discovery requests. Under the applicable regulations, the Agency was required either to satisfy the discovery requests or object to them. The Agency did not object to production, and the Agency did not timely respond to Baird's request for all relevant email documents. With respect to Sauer, the record shows that the Agency only raised the issue of emails with Sauer the day before his appearance at the hearing. The Agency's stated objection to production of Sauer's email—that the request came during the hearing—should have been rejected by the administrative judge. Baird's theory, as noted above, is that DeRuvo impermissibly interfered with the requirement that Blackman be the deciding official as to Baird's sanction. We express no view as to whether Baird's theory has any merit; we only hold that she is entitled to "obtain relevant information from another party to an appeal."

We thus conclude that the administrative judge abused his discretion in refusing to compel discovery of Sauer's email archives pertinent to this case. Given the Agency's lax attitude towards compliance with Baird's discovery requests, we cannot be sure that the Agency has in fact fully complied with the appropriate request for all email messages relating to Baird's case.

As set forth below, we hereby order the Board to enforce full compliance with Baird's discovery request insofar as it relates to email messages. To achieve this result, we vacate the Board's final decision (actually the administrative judge's initial decision) and remand the case for further proceedings. If, after compliance by the Agency with the Board's order on remand, no further support for Baird's theory of the case is found,

the Board is free to reinstate its holding affirming the Agency's removal action. If, on the other hand, full compliance with Baird's discovery request produces additional support for her theory that DeRuvo herself made the decision to punish Baird and selected the penalty of removal (thereby depriving the deciding official her role and rendering unnecessary any meaningful review of the Douglas factors), Baird shall be entitled to a further hearing.

The Agency may be free to adopt and enforce, under the Drug-Free Federal Workplace Program as a condition of employment, a reasonable zero tolerance policy pursuant to which any TDP employee who refuses to submit to or fails a drug test, will be removed. Such a policy would render wholly unnecessary application of the Douglas factors, which exist to guard against arbitrary penalties. As there is no showing in this case yet that the Agency was enforcing such a zero tolerance policy, we are not called upon to decide here whether some semblance of the Douglas factors would still be necessary to validate such a zero tolerance policy. (Also, an agency might not want to have to enforce a zero tolerance policy against an employee whose service is absolutely vital to accomplishment of the agency's mission.) Further, we are not called upon to decide what notice is necessary, if any, for an agency to give its employees before enforcing a zero tolerance penalty policy under the Drug-Free Federal Workplace Program. See Guillebeau v. Dep't of the Navy, 362 F.3d 1329, 1337 (Fed. Cir. 2004) (citing extensive body of law requiring agency standards to be communicated to the employee in advance of enforcement of such standards).

To remedy the Agency's failure to have fully complied with Baird's legitimate discovery requests, we vacate the Board's final decision and remand the case to the

Board.  The Board is hereby instructed to remand the case to the administrative judge with directions to the administrative judge to order the Agency promptly to produce all relevant emails in Sauer's archives to Baird, and to assure that all relevant personnel in the Agency either have already, or will promptly, produce all relevant emails to Baird.   If further production of email results in further evidence to support Baird's theory, the administrative judge shall afford Baird another hearing.

For the foregoing reasons, the final decision of the Board is vacated and the case is remanded to the Board for further proceedings as herein directed.

COSTS

No costs.

VACATED AND REMANDED

# United States Court of Appeals for the Federal Circuit

2007-3046

KIM R. BAIRD,

Petitioner,

v.

DEPARTMENT OF THE ARMY,

Respondent.

Petition for review of the Merit Systems Protection Board in No. CH0752060377-I-1.

RADER, <u>Circuit Judge</u>, dissenting.

In my view, the Board was well within its discretion to deny further discovery of Colonel Sauer's emails. Several of these emails were already part of the record. Also, Colonel Sauer testified before the administrative judge. With the record already replete with the views of Colonel Sauer, it is difficult to envision what Ms. Baird hoped to uncover from another avalanche of email discovery. Every trial or hearing requires a deciding official to draw lines and make evidentiary judgments. Otherwise every case could stretch on indefinitely.

In this instance, the administrative judge, for good reason, refused to revisit his rulings on discovery in the midst of a hearing that already featured Colonel Sauer's testimony and availability for examination and cross-examination. During this hearing, the administrative judge declined to reopen discovery to more of Colonel Sauer's emails to Ms. Baird. If this case presents an abuse of discretion, then nearly every judge in the country abuses his or her discretion in every trial and proceeding. The deciding official,

on the spot, simply has the best perspective for setting reasonable limits on the potential for limitless discovery, limitless lines of questioning, and limitless inquiries prompted by present discoveries, questionings, and inquiries. This court on appeal usurps that role by calling this routine evidentiary call an "abuse of discretion."

Moreover, this court should not unnecessarily interfere with the federal government's purview to implement and enforce zero-tolerance policies for illegal drug use with respect to federal employees. The record shows that Ms. Baird had marijuana metabolites in her system while working as a psychiatric nursing assistant for the United States Army. The record also shows that Ms. Baird had notice that she could be subject to random drug tests. Removal thus seems a highly appropriate remedy. As Mr. Mackey from South Park would say, "drugs are bad, mmmkay?" By labeling this routine evidentiary call as an abuse of discretion, this court will serve only to force Ms. Baird and the government to expend further resources on remand to reach the same result. For these reasons, I respectfully dissent.