**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

MATTHEW G. DONAHUE,
                Appellant,

       v.

DEPARTMENT OF JUSTICE,
                Agency.

DOCKET NUMBER
DC-1221-22-0483-W-2

DATE: August 29, 2024

# THIS ORDER IS NONPRECEDENTIAL[1]

<u>Robert Feitel</u>, Esquire, Washington, D.C., for the appellant.

<u>Kaymi Ross</u> and <u>Jill McCann</u>, Esquire, Springfield, Virginia, for the
    agency.

**BEFORE**

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member*

*Member Kerner recused himself and did not participate in the adjudication
of this appeal.

**REMAND ORDER**

¶1      The appellant has filed a petition for review of the initial decision, which denied his request for corrective action in this individual right of action (IRA) appeal. For the reasons discussed below, we GRANT the appellant's petition for

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

review, VACATE the initial decision, and REMAND the case to the Atlanta Regional Office[2] for further adjudication in accordance with this Remand Order.

## BACKGROUND

¶2     The appellant filed the instant IRA appeal, alleging that the agency engaged in whistleblower reprisal by directing his reassignment. *Donahue v. Department of Justice*, MSPB Docket No. DC-1221-22-0483-W-1, Initial Appeal File (IAF), Tab 9 at 10-11. The administrative judge developed the record and held the requested hearing before denying the request for corrective action. *Donahue v. Department of Justice*, MSPB Docket No. DC-1221-22-0483-W-2, Appeal File (W-2 AF), Tab 38, Initial Decision (ID). The following facts, as further detailed in the record and initial decision, appear to be undisputed.

¶3     The appellant began working for the agency's Drug Enforcement Administration (DEA) in 1991. W-2 AF, Tab 34-9, Hearing Transcript (HT) at 9. He was subject to a mobility agreement and changes to his duty station. W-2 AF, Tab 27 at 17. Throughout the appellant's career, he held numerous roles with ever increasing responsibilities, such as ones in Philadelphia, New York City, Barranquilla, Colombia, Bogota, Colombia, San Juan, Puerto Rico, and Mexico City, Mexico. W-2 AF, Tab 23 at 6-8; HT at 11-24. During the latter stages of his career, the appellant became the Deputy Chief of Operations for Foreign Operations, stationed in Chantilly, Virginia. W-2 AF, Tab 25 at 19; HT at 24-25.

¶4     While in this latest role, the appellant made the March 2021 disclosure underlying his claim of whistleblower reprisal. W-2 AF, Tab 25 at 23-24. The appellant informed the agency's Office of Professional Responsibility (OPR) that one of his Senior Executive Service subordinates, the Mexico Regional Director, engaged in misconduct by traveling to Miami, Florida, to meet with criminal defense attorneys. *Id.* According to the appellant, this subordinate did so over

---

[2] This appeal was reassigned from the Board's Washington Regional Office to the Atlanta Regional Office and was adjudicated by an administrative judge from that office.

the appellant's explicit instructions and despite the appearance of impropriety, since those attorneys represented potential targets of DEA investigations. *Id.* Soon thereafter, the agency detailed the Mexico Regional Director to a different position as OPR began investigating. *Id.*; ID at 3.

¶5 In June 2021, the United States Senate confirmed a new DEA Administrator. HT at 126-27; ID at 3. A couple of months after that, in August 2021, a new Principal Deputy Administrator (PDA) joined the agency, as well. HT at 128; ID at 3. These new agency leaders made several personnel changes at the highest levels of the DEA, including one involving the appellant. HT at 106-07, 215-25; IAF, Tab 14 at 50-52; ID at 3.

¶6 In October 2021, the PDA notified the appellant that he would be reassigned to the position of Regional Director for the Andean Region, at an office in Bogota, Colombia. W-2 AF, Tab 26 at 25, Tab 27 at 7-8. This was an office in which he had previously worked for several years, in roles that included both Assistant Regional Director and Acting Regional Director. W-2 AF, Tab 27 at 7-8; HT at 12, 15-17; PFR File, Tab 1 at 8. The letter informing the appellant of his reassignment stated that the appellant was the best person to replace the outgoing Regional Director, who was retiring, given the appellant's expertise and prior experience in the region. W-2 AF, Tab 26 at 25.

¶7 Days after notification of this directed reassignment, the appellant filed a complaint with the Office of Special Counsel (OSC), alleging that the reassignment was reprisal for his whistleblowing disclosure. IAF, Tab 1 at 5, Tab 9 at 16-25. Among other things, the appellant alleged that his reassignment by the PDA may be reprisal because the appellant's whistleblowing implicated a longtime colleague and friend of both the PDA and the Chief of Operations who worked directly under the PDA. IAF, Tab 9 at 7-8, 20; HT at 54-56. Around the time of his OSC complaint, the appellant's attorney also wrote to the PDA raising various other concerns, such as one about whether the reassignment amounted to

a demotion, the need for refresher language training, and questions about the appellant's physical safety in Colombia. W-2 AF, Tab 27 at 7-8.

¶8　　Over the ensuing months, the new PDA and Administrator proposed and then sustained the removal of the Mexico Regional Director, i.e., the individual identified in the appellant's disclosure as having engaged in misconduct. IAF, Tab 14 at 57-67; W-2 AF, Tab 27 at 26. Throughout this same time, the agency also took steps to prepare for the appellant's reassignment to Colombia. W-2 AF, Tab 27 at 7-8, Tab 14 at 79, Tab 29 at 36; ID at 4-5. However, in May 2022, the appellant informed the agency that he would retire that month rather than accept the directed reassignment to Colombia. W-2 AF, Tab 29 at 138-39; ID at 5. During this same period, OSC terminated its inquiry into the appellant's allegations of whistleblower reprisal, and this appeal followed. IAF, Tab 1, Tab 9 at 26-27.

¶9　　The administrative judge developed the record and held the requested hearing before issuing an initial decision that denied corrective action. She found that the appellant's disclosure about his subordinate's misconduct was protected. ID at 7-9. She also found that the appellant established the contributing factor criterion because the PDA who reassigned him in October 2021 had knowledge of the appellant's March 2021 disclosure. ID at 9-10. However, upon shifting the burden of proof, the administrative judge found that the agency proved by clear and convincing evidence that it would have taken the same action in the absence of the appellant's whistleblowing. ID at 10-11. She reasoned that the strength of the agency's evidence in support of the action, any motive to retaliate, and evidence about similarly situated nonwhistleblowers all weighed in the agency's favor. ID at 12-19.

¶10　　The appellant filed a petition for review. *Donahue v. Department of Justice*, MSPB Docket No. DC-1221-22-0483-W-2, Petition for Review (PFR) File, Tab 1. The agency filed a response, PFR File, Tab 6, and the appellant replied, PFR File, Tab 9.

¶11     On review, the appellant argues, among other things, that the administrative judge made a prejudicial error pertaining to discovery. PFR File, Tab 1 at 10-15. In particular, the appellant repeatedly moved to compel the production of additional evidence because he believed the agency's discovery responses were incomplete, but the administrative judge denied the same on multiple occasions. *Id.* We find that the circumstances warrant a remand for further proceedings.

¶12     In a September 2022 discovery request, the appellant sought all documents concerning the agency's decision to reassign him and implementation of the same. W-2 AF, Tab 9 at 7-8 n.2, Tab 14 at 22-24. Although we need not recount it in full, the appellant's discovery request described several specific agency computer systems and applications where records related to his reassignment would likely be found. W-2 AF, Tab 9 at 7-8 n.2, Tab 14 at 22-24. Soon after this discovery request, the administrative judge dismissed the appeal without prejudice, for automatic refiling in February 2023. IAF, Tab 17; W-2 AF, Tab 1. According to the appellant, the agency responded to his discovery request in November 2022, with just 10 pages of emails and text messages, all of which were communications between the appellant and the PDA. W-2 AF, Tab 9 at 7-8; PFR File, Tab 1 at 10.

¶13     In March 2023, the appellant notified the agency that its discovery response appeared to be incomplete because he had been provided "virtually no emails, text messages, or other communications" about the decision to reassign him and implementation of the same. W-2 AF, Tab 9 at 15, Tab 14 at 9. To illustrate his concern, the appellant provided the agency with a couple of emails that he had obtained elsewhere, indicating that they should have been included in the agency's discovery response. W-2 AF, Tab 9 at 15, 17-24. In the months that followed, between March and June 2023, the appellant repeatedly pressed the agency for more information about the completeness of its discovery response, along with notice that he would file a motion to compel, if need be. W-2 AF, Tab 13 at 10-11, 13, Tab 14 at 9-20. Agency counsel eventually advised the

appellant that he had personally searched again and found no additional materials. W-2 AF, Tab 13 at 10-11, 13, Tab 14 at 9-20.

¶14 In June 2023, the appellant filed the motion to compel he had warned of, recounting the ongoing discovery dispute. W-2 AF, Tab 9. He requested "an Order requiring the production of all relevant documents . . . and a mechanism to verify the thoroughness of the search and the accuracy of the result." *Id.* at 12. The agency responded, arguing that the motion to compel was untimely because the appellant filed the motion on the day prehearing submissions were due and after the period for discovery had ended. W-2 AF, Tab 13 at 6-7. Agency counsel further asserted that it had already provided all relevant documents within its possession. *Id.* at 7-8. While doing so, the agency suggested that the emails the appellant had discovered on his own, i.e., the ones he identified as establishing that the agency's discovery response was incomplete, were not records in the agency's possession because the author of the emails had retired the year before.[3] *Id.* at 7 n.2. The appellant replied. W-2 AF, Tab 14. Among other things, he provided a detailed explanation of the systems that should have been searched; described why agency counsel's claim to have searched himself seemed implausible, given the agency's security protocols; and asked the administrative judge to designate an agency employee with the necessary access to both search the identified systems and provide a sworn certification about doing so. *Id.* at 5-6.

---

[3] Agency counsel's assertion contained little detail and was at least partially inaccurate. The emails were between two agency officials—the Executive Assistant to the Deputy Chief of Operations and the Acting Section Chief. W-2 AF, Tab 9 at 18-20. The former sent the first email, and the latter responded with the second email. *Id.* Therefore, it was inaccurate for agency counsel to assert that the Acting Section Chief authored both. W-2 AF, Tab 13 at 7. And while it is plausible that the agency lost access to the Acting Section Chief's emails less than a year after his retirement, agency counsel did not identify any associated record retention policy or otherwise explain the loss. Agency counsel also did not explain why the retirement of one party to an email between two agency officials would preclude the agency from locating those emails through the other party's email account.

¶15     The administrative judge denied the appellant's motion to compel. She was not persuaded by his arguments and assertions about the sufficiency of the agency's search. W-2 AF, Tab 15 at 1-2. However, that same day, the agency appointed a new attorney to this appeal. W-2 AF, Tab 16. This new agency counsel acknowledged the discovery dispute to date, including the appellant's specific arguments about the prior agency counsel's representations and his access to records. W-2 AF, Tab 18 at 4. She indicated that she had already begun to further review the matter and the agency's document production. *Id.* A couple of weeks later, in July 2023, the agency acknowledged that it had uncovered approximately 70 additional records in response to the appellant's original discovery request. W-2 AF, Tab 19 at 4.

¶16     Armed with these additional records and the implicit acknowledgment that the agency's earlier discovery responses had been incomplete, the appellant immediately sought to depose those responsible for the agency's searches. W-2 AF, Tab 20 at 8-9. He also sought associated documentation that would show, inter alia, the scope of the search and the databases searched. *Id.* The agency objected. *Id.* at 12-13. Therefore, the appellant filed a July 2023 motion to compel. *Id.* at 4-5. The agency filed a response in opposition, W-2 AF, Tab 21 at 5-7, and attached the most recent set of 70 records it had located, *id.* at 17-153. The administrative judge denied the appellant's motion to compel, deciding that the request for deposition was not reasonably calculated to lead to the discovery of admissible evidence, as required by 5 C.F.R. § 1201.72. W-2 AF, Tab 22.

¶17     During the August 2023 hearing, this topic came up once more as the appellant took testimony from the PDA. When asked, the PDA acknowledged that he sometimes used text messages to communicate with other senior leaders. HT at 304. When further asked whether he sent any text messages about the appellant's reassignment, the PDA stated, "I'm sure that there were texts about the acceptance or the timing or, I'm sure that there were some texts about that." *Id.* at 305. In response to a follow-up, he stated, "I don't know what I would

have texted about, about his reassignment." *Id.* at 307. At that point, the appellant renewed his discovery motions, arguing that no such text messages were included in the agency's discovery responses. *Id.* at 307-08. The administrative judge denied the renewed motions.[4] *Id.* at 308-10. The appellant continued to object to all of these rulings in his closing brief. W-2 AF, Tab 36 at 5 n.1.

¶18 The appellant's petition for review recounts this timeline of events and, among other things, argues that the administrative judge erred in her discovery-related rulings. PFR File, Tab 1 at 10-15. He also submits two sworn statements, dated after the initial decision, from recently retired agency officials.[5] *Id.* at 24-26, 28-29.

¶19 The first of these newly submitted sworn statements is from the former Associate Deputy Assistant Administrator. *Id.* at 24-26. This individual describes having personal familiarity with the agency's records systems and its processes for seeking records for litigation purposes. *Id.* at 24-25. She further

---

[4] In denying the renewed motions, the administrative judge seemed to rely, at least in part, on agency counsel's representation that some text messages had been provided to the appellant during discovery and that they were included in the record. HT at 308-10. However, appellant's counsel asserted that the only text messages provided were between the appellant and the PDA, i.e., not between the PDA and any other agency official. *Id.* Agency counsel did not indicate otherwise and did not identify where text messages might be found in the record. *Id.* In the agency's response to the appellant's petition for review, it once again refers to these text messages in the record, without identifying where the Board might find them. PFR File, Tab 6 at 11 n.2. Nevertheless, we found a handful of text messages in an agency pleading, which seem to be between the appellant and the PDA. IAF, Tab 14 at 11, 96-99.

[5] The appellant asserted that these officials were unwilling to speak with him previously due to fear of reprisal. PFR File, Tab 1 at 12. But the sworn statements are silent about the matter. *Id.* at 24-26, 28-29. Nevertheless, in furtherance of his assertion about them fearing reprisal, the appellant indicated that both individuals retired after the initial decision was issued. *Id.* at 12. The agency, however, stated that they retired in the two months before the initial decision was issued. PFR File, Tab 6 at 15 n.4. Neither party submitted any evidence about the matter. If the agency's dates are to be believed, both retirements happened before the hearing and initial decision in this appeal. *Compare id.*, *with* W-2 AF, Tab 15. However, both retirements occurred after the administrative judge denied the appellant's first motion to compel, and one of the retirements happened just 2 days before the appellant's prehearing submission deadline. *Compare* PFR File, Tab 6 at 15 n.4, *with* W-2 AF, Tab 15 at 2.

describes how the agency's searches for emails as it related to the appellant were "unusually limited." *Id.* at 25. Among other things, she asserts that the searches excluded the period leading up to the appellant's directed reassignment and excluded the senior agency officials who would have been involved in the decision.[6] *Id.*

¶20 The second sworn statement included in the appellant's petition is from the former Deputy Chief Inspector of the agency's OPR. *Id.* at 28-29. He similarly describes having personal familiarity with the agency's records systems and processes for seeking records for litigation purposes. *Id.* at 28. He further describes why he had reason to believe that the agency had not conducted a complete search for records in this appeal and how he contacted an Office of Inspector General investigator about the same in June 2023. *Id.* at 28-29.

¶21 In the agency's response to the appellant's petition, it continues to assert that the appellant's June 2023 motion to compel was untimely. PFR File, Tab 6 at 14. The agency also asserts that the administrative judge correctly denied that motion, the July 2023 motion to compel, and the motion to compel made at the hearing on the merits. *Id.* at 14-18. In addition, the agency argues that the Board should not consider the sworn statements attached to the appellant's petition because the appellant has not shown that the information contained in those statements was previously unavailable. *Id.* at 15.

## ANALYSIS

¶22 Discovery is the process by which a party may obtain relevant information from another person or a party that the other person or party has not otherwise provided. *Chandler v. Department of the Treasury*, 120 M.S.P.R. 163, ¶ 10 (2013); 5 C.F.R. § 1201.72(a). Relevant information includes information that

---

[6] The sworn statement and the appellant's arguments both indicate that a screenshot relevant to the agency's search is attached to the sworn statement, PFR File, Tab 1 at 13, 26, but we see no such attachment. The agency's response to the petition notes the same and indicates that the agency had reached out to the appellant, seeking the screenshot, to no avail. PFR File, Tab 6 at 15 n.3.

appears reasonably calculated to lead to the discovery of admissible evidence. *Chandler*, 120 M.S.P.R. 163, ¶ 10; 5 C.F.R. § 1201.72(a). The parties are expected to start and complete discovery with minimal intervention from the Board. *McClenning v Department of the Army*, 2022 MSPB 3, ¶ 19; 5 C.F.R. § 1201.71.

¶23    In the event of a discovery dispute, the Board's regulations contemplate a prompt motion to compel. 5 C.F.R. § 1201.73(d)(3) (providing that any motion for an order to compel or issue a subpoena must be filed with the judge within 10 days of the date of service of objections or, if no response is received, within 10 days after the time limit for response has expired). However, the Board's regulations also require that the parties attempt to resolve any discovery dispute before filing a motion to compel. 5 C.F.R. § 1201.73(c)(1) (providing that, before filing any motion to compel or issue a subpoena, the moving party shall discuss the anticipated motion with the opposing party or nonparty, and all those involved shall make a good faith effort to resolve the discovery dispute and narrow the areas of disagreement).

¶24    To the extent that the agency has argued that the appellant's June 2023 motion to compel was untimely, we disagree for a few reasons. First, the agency has acknowledged November 7, 2022, as the date of its initial discovery response. PFR File, Tab 6 at 14. However, this was during the October 2022 to February 2023 period in which the appeal was dismissed without prejudice. IAF, Tab 17; W-2 AF, Tab 1. That dismissal did not provide any instructions about how the parties should proceed in the event of a discovery dispute during the dismissal period. IAF, Tab 17. In addition, the record before us suggests that the appellant's delay in filing a motion to compel was partially attributable to the agency's delays in responding to the appellant's efforts to resolve the matter independent of the administrative judge. W-2 AF, Tab 13 at 10-11, 13, Tab 14 at 9-20. Also contributing to the delay in filing his motion to compel was that the motion did not stem from any agency objection to his discovery request. It

instead stemmed from, inter alia, the appellant uncovering specific emails that the agency did not provide as part of its discovery response. Finally, we note that the agency's argument about the timeliness of the appellant's June 2023 motion to compel is silent about the fact that the agency implicitly acknowledged, after the motion was filed, that it should have turned over an additional 70 records with its initial discovery response. For all these reasons, we are not persuaded by the agency's arguments about the timeliness of the appellant's first motion to compel.

¶25   Looking more broadly at the appellant's numerous efforts to ensure that the agency's discovery responses were complete, including multiple motions to compel, we recognize that an administrative judge has broad discretion in ruling on discovery matters. *Dieter v. Department of Veterans Affairs*, 2022 MSPB 32, ¶ 25. The Board will not find reversible error in such rulings absent an abuse of discretion. *Id.* Nevertheless, we find that the circumstances in this appeal warrant a remand.

¶26   We are struck by the fact that the appellant repeatedly detailed the records sought, including the computer systems and applications where they would likely be found, along with associated security protocols. IAF, Tab 9 at 7-8 n.2. To illustrate, the appellant sought records relating to the decision to reassign him, such as ones that might be found within certain specified email domain names, messaging applications such as WhatsApp or Signal, archived hard drives, and other agency record storage systems such as "Capstone, Jabber, and Kraft communications." W-2 AF, Tab 9 at 7-8 n.2, Tab 14 at 22-23.

¶27   Meanwhile, the agency's correspondence with the appellant and its pleadings submitted into the record included only vague assertions that agency counsel searched for discoverable materials. W-2 AF, Tab 13 at 7, 13. For example, during email correspondence between the parties about these issues, agency counsel referred to his own personal "search [and] re-search on the documents requested." *Id.* at 13. In subsequent correspondence, agency counsel once again stated that the "[a]gency has gone back and reviewed and re-searched

its files for any additional relevant materials." *Id.* at 10. The agency's pleading in response to the appellant's first motion to compel similarly describes its searches in general terms. *Id.* at 4, 7. None describe details such as the systems and applications searched, search terms used, or date limitations. This continued to be the case, even after the appellant identified some emails that were missing from the agency's discovery response, despite the appellant articulating why he had reason to believe that agency counsel may not have had access to certain agency systems, and despite the appellant repeatedly asking for more information about the agency's searches to ensure their completeness. W-2 AF, Tab 14 at 5-6, 9. Then, agency counsel turned over an additional 70 records, implicitly acknowledging that its original discovery response was incomplete, without any explanation for why they were not turned over earlier, and still without identifying the kinds of searches that had been conducted to obtain discoverable records. W-2 AF, Tab 19 at 4, Tab 20 at 8-9, 12-13, Tab 21 at 5-6.

¶28    Regarding the sworn statements the appellant attaches to his petition for review, the agency is correct to note that the appellant did not submit them below. PFR File, Tab 6 at 15. The Board generally will not consider evidence submitted for the first time on review absent a showing that the documents and the information contained in the documents were unavailable before the record closed despite due diligence, and that the evidence is of sufficient weight to warrant an outcome different from that of the initial decision. *Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶ 5 n.1. However, we exercise our discretion to consider the appellant's newly submitted evidence in this appeal. *Compare* 5 C.F.R. § 1201.115(d) (recognizing that the Board may grant a petition for review in the case of new and material evidence if the information contained in that evidence was previously unavailable), *with* 5 C.F.R. § 1201.115(e) (providing that the Board nevertheless reserves the authority to consider any issue before it). We do so because of the particular facts and circumstances at issue. This includes the appellant's diligent efforts to ensure that the agency had

complied with its discovery obligations below, the agency's documented failure to do so at least once before, and the newly submitted evidence's suggestion that the agency improperly thwarted the appellant's efforts to pursue this case.[7] Even if we did not consider the sworn statements attached to the appellant's petition, we would reach the same result.

¶29    In sum, we find that the administrative judge abused her discretion in denying the appellant's June 2023 motion to compel, we vacate the initial decision, and we remand the case for further proceedings. W-2 AF, Tab 9 at 12, Tab 14 at 22-24. On remand, the administrative judge must order compliance with the appellant's discovery request insofar as he sought records about (1) the 2021 decision to transfer him from Chantilly, Virginia, to Bogota, Colombia and (2) the implementation of the same. IAF, Tab 9 at 7-8, Tab 14 at 23. During the remand proceedings, the agency must submit a sworn statement by an individual with knowledge of the search efforts and the agency systems and applications involved to demonstrate the completeness of its searches for discoverable materials. The statement must, at a minimum, identify the search parameters, the systems and applications searched, the search terms, and the time frames searched. The administrative judge must then determine whether the agency's searches were sufficient and, if necessary, order a more complete search. If no further support for the appellant's theory of his case is found, the administrative judge may issue a remand initial decision based on the existing record.[8] *See*

---

[7] At their core, these sworn statements suggest that the agency did not conduct proper discovery searches. However, we note that one also describes the agency's email retention policy as requiring the retention of emails from all employees for three years and the permanent retention of emails from senior employees. PFR File, Tab 1 at 24. This is in stark contrast to original agency counsel's suggestion that his 2022 search could not uncover the November 2021 emails in which an Acting Section Chief was the author or recipient due to his December 2021 retirement. *Compare* W-2 AF, Tab 13 at 7 n.2, *with* W-2 AF, Tab 9 at 18-21.

[8] The appellant identified another distinct discovery dispute. He recently uncovered a May 2022 decision by an Equal Employment Opportunity Commission (EEOC) judge in an unrelated case which found the PDA's testimony not credible and further found him to be an official responsible for the agency's discrimination and reprisal. PFR File,

*Baird v. Department of the Army*, 517 F.3d 1345, 1351 (Fed. Cir. 2008) (providing comparable instructions after finding that an administrative judge should have granted an appellant's motion to compel due to the employing agency's "lax attitude towards compliance with . . . discovery requests"). On the other hand, if additional support for the appellant's theory of reprisal is uncovered due to renewed search efforts by the agency, the administrative judge must offer the appellant a supplemental hearing. *Id.* In either case, the administrative judge must conclude by issuing a remand initial decision in which she may incorporate prior findings to the extent that doing so is warranted.[9]

---

Tab 1 at 31-45. According to the appellant, the agency should have produced this in response to an interrogatory and when discussing the matter at the hearing. *Compare* PFR File, Tab 6 at 195-96 (interrogatory regarding "any investigations and/or complaints filed" against those involved in the appellant's reassignment, along with the agency's response that there were none involving the PDA), *and* HT at 210-212 (agency counsel indicating that the PDA had no prior discipline), *with* PFR File, Tab 1 at 31-45 (EEOC decision). The agency disagrees and argues that the Board should not consider this evidence submitted for the first time on review. PFR File, Tab 6 at 19-20 (referencing 5 C.F.R. § 1201.115(d)). Because we are remanding this appeal for further discovery proceedings, the administrative judge should consider what significance, if any, the decision in an unrelated case has on this case. *See Semenov v. Department of Veterans Affairs*, 2023 MSPB 16, ¶ 34 (exercising the Board's discretion to instruct an administrative judge to permit new arguments and evidence about a new claim presented for the first time on review when the appeal was already being remanded for other reasons); 5 C.F.R. § 1201.115(e).

[9] Because we are remanding the appeal for further proceedings, it would be premature for us to consider the appellant's arguments about whether the administrative judge correctly determined that the agency rebutted his prima facie case of reprisal. PFR File, Tab 1 at 15-21.

**ORDER**

¶30      For the reasons discussed above, we remand this case to the Atlanta Regional Office for further adjudication in accordance with this Remand Order.

FOR THE BOARD:      *Gina K. Grippando*
                  _____
                  Gina K. Grippando
                  Clerk of the Board

Washington, D.C.